RHESA HAWKINS BARKSDALE, Circuit Judge:
For this 42 U.S.C. § 1983 action arising out of the death of Eugene Stewart, an inmate in the Mississippi Department of Corrections (MDOC), Appellants challenge an adverse summary judgment, claiming material fact issues for whether, in violation of the Eighth Amendment, three of Stewart’s treating physicians and the medical director at the prison hospital were deliberately indifferent to his serious medical needs, resulting in his death. We AFFIRM.
I.
This action centers on the treatment provided Stewart, from August 1994 until his death four months later, for decubitus ulcers (commonly known as bedsores), which ultimately caused his death. Appellants also made claims in district court against MDOC officials Murphy and Har-gett. As indicated in Appellants’ brief, as well as conceded by their counsel at oral argument, Appellants have abandoned their claims against these two officials and contest only the summary judgment awarded Drs. Knutson, Russell, Kim, and Dial.
Appellants filed this action in November 1996, presenting § 1983 claims against the two MDOC officials and Drs. Knutson and Russell. The parties consented to the case being referred to a magistrate judge. After conducting discovery, Appellants added Drs. Kim and Dial as defendants.
In their answer, Appellees raised immunity defenses, including sovereign and qualified immunity. Contending that Appellants’ pleading lacked specificity, Appel-lees moved the district court to require a more specific response to the immunity defenses. Appellees based this motion on Schultea v. Wood, 47 F.3d 1427, 1433 (5th Cir.1995) (en banc), in which this court stated: “When a public official pleads the affirmative defense of qualified immunity in his answer, the district court may, on the official’s motion or on its own, require the plaintiff to reply to that defense in detail”. See also Baker v. Putnal, 75 F.3d 190, 195 (5th Cir.1996).
The district court denied the motion, ruling that the original and amended complaints were “fact specific”; and that “[a]ny further clarification can be obtained through discovery”. Appellees do not challenge this ruling on appeal, although they continue to assert that Appellants’ complaint failed to plead an Eighth Amendment claim sufficiently.
In December 1997, Appellees moved, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss the complaint for failure to state a claim. As a result, although the magistrate judge then questioned the specificity of the complaint, he noted that, in the year since it had been filed, the “somewhat inadequate allegations [in the complaint] have now been considerably fleshed out by discovery”. Accordingly, in the interest of efficiency, the magistrate judge considered the evidence developed through discovery and treated the motion as one for summary judgment, rather than striking the complaint and requiring Appellants to refile.
The magistrate judge held that Appellants failed to show the requisite subjective knowledge and deliberate indifference by Appellees. He noted that, although Appellants may have shown negligence, “there is no evidence that [Stewart] was deliberately ignored or maltreated or that the defendants committed willful wrongs or malicious acts”. Therefore, this action was dismissed with prejudice.
II.
A.
The motion to dismiss for failure to state a claim was properly treated as one for summary judgment. See Fed.R.CivP. *533 12(b) (“If, [on a 12(b)(6) motion to dismiss], matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56” (emphasis added)); Carter v. Stanton, 405 U.S. 669, 671, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972); Baker, 75 F.3d at 197 (“... where a district court grants a motion styled as a motion to dismiss but bases its ruling on facts developed outside the pleadings, we review the order as an order granting summary judgment”). Appellees do not claim error in their Rule 12(b)(6) motion being treated as one for summary judgment. In fact, they agree that, “considering the posture of the pleadings and the plethora of discovery and evidence before the [district court], [their motion to dismiss] was properly considered by the [district court] under the summary judgment standard”.
B.
We review a summary judgment de novo, applying the same standard as that used by the district court. E.g., Melton v. Teachers Ins. & Annuity Ass’n of America, 114 F.3d 557, 559 (5th Cir.1997). Under Rule 56, such judgment is appropriate “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law”. Fed.R.Civ.P. 56(c). We view the pleadings and summary judgment evidence in the light most favorable to the nonmovant. Melton, 114 F.3d at 559. The nonmovant must “make a sufficient showing of an essential element of the case to which [he] has the burden of proof’. Id. He “must set forth specific facts to establish that there is a genuine issue for trial, but where the evidential submissions lack probative value as to a genuine issue, summary judgment is appropriate”. Id.
In this regard, the substantive law determines what facts are “material”. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A material fact issue exists “if the evidence is such that a reasonable jury could return a verdict for the nonmoving party”. Id.; see Capital Concepts Properties 85-1 v. Mutual First, Inc., 35 F.3d 170, 174 (5th Cir.1994). “However, ‘[t]he mere existence of a scintilla of evidence in support.of the plaintiffs position will be insufficient [to preclude summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff.’ ” Doe v. Dallas Indep. Sch. Dist., 153 F.3d 211, 215 (5th Cir.1998) (quoting Anderson, 477 U.S. at 252, 106 S.Ct. 2505) (alteration in original).
1.
The § 1983 claim at hand charges violation of Stewart’s rights under the Eighth Amendment to the United States Constitution: “Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted”. Of course, the Amendment does not, by its precise words, mandate a certain level of medical care for prisoners. On the other hand, the “cruel and unusual punishments” clause has been interpreted to mandate the provision of medical care to them. E.g., Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (“cruel and unusual punishments” clause imposes duty on prison officials to “ensure that inmates receive adequate food, clothing, shelter, and medical care”).
Along this line, inadequate medical care by a prison doctor can result in a constitutional violation for purposes of a § 1988 claim when that conduct amounts to “deliberate indifference to [the prisoner’s] serious medical needs”, “consti-tut[ing] the ‘unnecessary and wanton infliction of pain’ proscribed by the Eighth Amendment”. Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (internal citation omitted) (quoting Gregg v. Georgia, 428 U.S. 153, 182-83, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)). Farmer, 511 *534 U.S. at 837, 114 S.Ct. 1970, defined the “deliberate indifference” standard, explaining that a prison official is not liable “unless the official knows of and disregards an excessive risk to inmate health or safety”. Id. (emphasis added); see also Bradley v. Puckett, 157 F.3d 1022, 1025 (5th Cir.1998).
Therefore, although inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not. Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir.1993) (“It is clear that negligent medical treatment is not a cognizable basis upon which to predicate a section 1983 action”); Williams v. Treen, 671 F.2d 892, 901 (5th Cir.1982) (“mere negligence in giving or failing to supply medical treatment would not support an actioh under Section 1983”(emphasis added)); see also Jackson v. Cain, 864 F.2d 1235, 1246 (5th Cir.1989). “Deliberate indifference encompasses only the unnecessary and wanton infliction of pain repugnant to the conscience of mankind.” McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir.1997); see also Bradley, 157 F.3d at 1025.
The heart of Appellants’ claim is that the pattern of neglect by both the facility and the defendant physicians presents a material fact issue for whether the physicians’ conduct constitutes deliberate indifference. Specifically, Appellants assert that the doctors’ failure to properly treat Stewart’s decubitus ulcers, or to transfer him to another facility for intensive physical therapy and other treatment, met this standard. We conclude, however, that Appellants have failed to present a material fact issue because, in the light of the summary judgment evidence, no reasonable juror could find that the physicians were deliberately indifferent.
The underlying facts concerning the course of Stewart’s treatment are largely undisputed. When he was first incarcerated at the prison in May 1993, Stewart was 67 years old and suffered from numerous ailments, including hypertension, arthritis, gout, and heart disease. Restated, Stewart was not a healthy man when he entered prison.
Approximately a year later, Stewart was transferred to the prison disability unit, at which time he was essentially confined to a wheelchair. At some point shortly after his transfer to the disability unit, Stewart became incontinent of bowel and bladder.
a.
Dr. Dial admitted Stewart to the prison hospital on 18 August 1994 to treat grossly swollen legs, which can be indicative of congestive heart failure. After treating this condition for five days, Dr. Dial discharged Stewart to a disability unit. The next day, Dr. Dial was advised that Stewart had a large decubitus ulcer on his lower back. Dr. Dial ordered treatment of the ulcer by cleaning the area with Betadine, applying sugardyne dressing, and placing Stewart on the next sick call.
Although the dissent asserts that Stewart did not receive “even the most rudimentary medicinal functions”, Dr. Dial ordered that his wounds be cleansed and treated with antibiotics, and provided for a follow-up examination. The dissent may not find this treatment sufficient; but, at the very least, it was far more than “rudimentary” medical care.
At worst, any failure by Dr. Dial to discover the ulcer earlier, to read the nurses’ notes indicating Stewart’s incontinence or mobility problems, or to follow-up to ensure that his orders were carried out might constitute negligence, not the requisite deliberate indifference.
b.
When Stewart’s condition did not improve in the disability unit, he was readmitted to the prison hospital on 6 September 1994, under the care of Dr. Kim. While Stewart was under her care, Dr. Kim took cultures from the decubitus ulcers, debrid-ed the wounds several times, and administered antibiotics and I.V. fluids. She or *535 dered that the dressings be changed at least two to three times daily; and that Stewart be repositioned every three hours. Dr. Kim acknowledges that, due to staffing problems, the nurses sometimes had difficulty following all of the orders.
When the ulcers did not significantly improve, Dr. Kim transferred Stewart to a nearby non-prison hospital for consultation and treatment by a local surgeon, Dr. Wright. Upon Stewart’s return to the prison hospital, Dr. Kim did not follow Dr. Wright’s recommendation that Stewart be transferred to another facility to receive, among other things, physical therapy. Instead, Dr. Kim ordered that Stewart be kept out of bed as much as possible; and that the nurses move his extremities. Because of the seriousness of Stewart’s condition, Dr. Kim ultimately transferred Stewart’s care to Dr. Knutson.
This evidence does not present a material fact issue for deliberate indifference by Dr. Kim. Even though she did not follow Dr. Wright’s recommendations, this suggests nothing more than a difference in opinion as to the appropriate method of treatment under the circumstances. See Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir.1997).[1]
In contrast to the charge by the dissent that Stewart was not provided with “even the most rudimentary medicinal functions”, Dr. Kim actively treated Stewart’s condition. The evidence shows that she personally debrided the ulcers, ordered that the wounds be medicated and dressed, and monitored Stewart’s nutritional levels. Further, although the dissent notes that Dr. Kim consulted with Dr. Wright, it fails to mention that she took the additional step of transferring Stewart to another hospital to enable Dr. Wright to examine and treat Stewart and make a recommendation. Again, Dr. Kim ultimately decided not to follow Dr. Wright’s advice. In any event, Dr. Kim’s active treatment of Stewart is far more than “rudimentary”.
Finally, the dissent repeatedly asserts that the doctors are at fault for failing to transfer Stewart to another facility. Dr. Kim specifically addressed this in her deposition, and stated that, in her opinion, Stewart’s condition was not serious enough to warrant a transfer to an outside hospital.[2] As noted, the plaintiffs must present a material fact issue regarding Dr. Kim’s deliberate indifference to Stewart’s medical needs; they have not done so.
c.
When Dr. Knutson took over Stewart’s care from Dr. Kim, in order to treat the ulcers, he was aware of Dr. Wright’s recommendations, but gave no consideration to transferring Stewart to another facility for therapy. Dr. Knutson treated the ulcers with Dakin solution and sugar-dyne, ordered that the dressings be changed twice daily, and directed that Stewart be repositioned every hour. Additionally, Dr. Knutson periodically checked the wounds and ordered that Stewart get out of bed for extended periods of time. Once more, the treatment provided by Dr. Knutson, including orders to clean and medicate the ulcers and reposition Stewart, was more than “rudimentary”.
Dr. Knutson testified that he often did not read the nurses’ notes, which indicated that Stewart had an infection from a cathe *536 ter, and he did not prescribe antibiotics.[3] Knutson did not see Stewart during the four day Thanksgiving holiday, and the medical records indicate that Stewart was not seen by a physician during that time.
Dr. Knutson next saw Stewart on 28 November 1994; to the doctor, Stewart “appeared like he was going to die”. Dr. Knutson attempted to treat Stewart at the prison facility, but ultimately transferred him to the University of Mississippi Medical Center (UMC) on 30 November 1994.
The attending physician who admitted Stewart to UMC testified that Stewart had the worst bedsores she had ever seen.[4] He died there on 7 December 1994 from sepsis, due to the decubitus ulcers.
Dr. Knutson did not transfer Stewart to another facility for physical therapy, or read the nurses’ notes, or administer antibiotics. Again, at worst, these actions might constitute negligence, not the requisite deliberate indifference.
d.
Dr. Russell, the medical director at Parehman, was not one of Stewart’s treating physicians. His limited contact with Stewart occurred during grand rounds. Dr. Russell testified that he was not informed that the nurses were having difficulty following Dr. Kim’s orders.
There is no material fact issue concerning Dr. Russell’s understanding that Stewart’s ulcers were being treated appropriately. Dr. Russell was aware of the consultation with Dr. Wright, but did not follow up with Dr. Kim concerning Dr. Wright’s recommendations. Again, there is no material fact issue as to deliberate indifference.[5]
2.
At oral argument, Appellants’ counsel repeatedly referred to evidence that the nurses consistently did not follow doctors’ orders regarding Stewart’s treatment; counsel claimed this equated with deliberate indifference. However, Appellants did not sue the nurses; and, of course, the doctors may not be held liable for § 1983 violations under a theory of respondent superior or vicarious liability, based upon claimed omissions by the nurses. E.g., Monell v. Dept. of Social Servs., 436 U.S. 658, 692, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); Simmons v. Cook, 154 F.3d 805, 808 (5th Cir.1998) (no respondent superior liability under § 1983); Eason v. Thaler, 73 F.3d 1322, 1327 (5th Cir.1996); Pierce v. Texas Dept. of Criminal Justice, 37 F.3d 1146, 1150 (5th Cir.1994) (no vicarious liability under § 1983); Thompson v. Steele, 709 F.2d 381, 382 (5th Cir.1983) (“Certainly § 1983 does not give a cause of action based on the conduct of subordinates”).[6]
*537 3.
Appellants contend that the cumulative claimed acts of negligence by Appel-lees is sufficient to raise a material fact issue for deliberate indifference. To the contrary, each defendant’s subjective deliberate indifference, vel non, must be examined separately. See Sellers v. Henman, 41 F.3d 1100, 1102-03 (7th Cir.1994) (“The only significance of multiple acts of negligence is that they may be evidence of the magnitude of the risk created by the defendants’ conduct and the knowledge of the risk by the defendants”).[7]
Again, on this record, the claimed independent acts of negligence by each physician were not sufficient to raise a material fact issue that each doctor knew that his acts or omissions subjected Stewart to an excessive risk of harm, yet responded to the risk with deliberate indifference.[8] There is no probative evidence that the doctors denied, substantially delayed, or intentionally interfered with Stewart’s treatment. Cf. Hudson v. McHugh, 148 F.3d 859, 863-64 (7th Cir.1998) (jail officers’ and nurse’s refusal to do anything about prisoner’s repeated requests for epilepsy medicine despite knowing he did not have his medicine constituted deliberate indifference to serious medical need). The doctors actively treated Stewart’s admittedly serious condition. “Disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs.” Norton, 122 F.3d at 292.
*538 At most the evidence was merely color-able on the critical issue of whether the doctors’ conduct amounted to deliberate indifference to the treatment of Stewart’s decubitus ulcers. Summary judgment for the Appellee physicians was proper, because “there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party”. Anderson, 477 U.S. at 249, 106 S.Ct. 2505.
C.
As for Appellants’ state law claims, summary judgment was proper, pursuant to Sparks v. Kim, 701 So.2d 1113 (Miss.1997), which held that prison physicians are protected by qualified immunity for medical treatment decisions, unless “they commit willful wrongs or malicious acts”. See id. at 1116-17 (quoting Hudson v. Rausa, 462 So.2d 689, 696 (Miss.1984)). As shown supra, “[t]he fact that the treatment was inadequate for the severity of [the] condition does not indicate that the doctors in question committed ‘willful wrongs or malicious acts’”. Id. at 1117.[9]
III.
The record simply does not reflect the parade of horrors trumpeted by the dissent—far from it. But, be that as it may, there is no material fact issue to support the requisite deliberate indifference necessary for liability. Accordingly, the judgment for Appellees is

AFFIRMED.

. Although the dissent states that Dr. Kim "disregarded” that advice, Dr. Kim’s deposition reflects that she considered Dr. Wright’s advice, but chose to take another course of treatment. As noted, this does not present a material fact issue concerning the requisite deliberate indifference.

. The dissent states that the affidavit of Dr. Rothschild (an expert for plaintiffs, but who only reviewed the medical records) reflects a note by Dr. Kim that the prison hospital was inadequate to provide the necessary treatment for Stewart. It is unclear how the dissent came to attribute this statement to Dr. Kim, for in his affidavit, Dr. Rothschild refers only to “the statement of one physician”, without further identification.

. The dissent maintains that Dr. Knutson was deliberately indifferent to Stewart’s medical needs in failing to prescribe antibiotics for the catheter infection. However, Dr. Knutson testified that he did not read the nurses' notes and that he was unaware of the possible infection symptoms. Further, Dr. Knutson testified that the symptoms noted by the nurses (pus and a foul odor) were not necessarily symptomatic of an infection. Thus, without evidence that Dr. Knutson knew Stewart had an infection and deliberately disregarded it, a material fact issue is not presented.

. In her deposition, Dr. Schlessinger, the attending physician at UMC who admitted Stewart, affirmatively answered questions whether the lack of antibiotics from November 13 until Stewart was admitted to UMC could have contributed to the spread of the sepsis and whether physical therapy would have been "helpful and advisable”. At no time during her deposition does she state that a combination of antibiotics and physical therapy would have prevented Stewart’s death.

. Because it does not contest our holding with regard to Dr. Russell, we presume the dissent agrees with this portion of the majority opinion.

. The dissent does not assert that the doctors are vicariously liable for the actions of the nurses, per se. It does assert, however, that the doctors knew that the nurses would not be able to carry out the doctors' orders. However, the record does not present a material fact issue on this point. Dr. Dial testified in his *537 deposition that he expected his orders would be carried out. Although Dr. Kim recognized that the nurses sometimes had difficulty carrying out all of her orders, her testimony indicates that she did not perceive the problem to be serious enough as to impede Slew-art’s treatment at the prison. Finally, Dr. Knutson testified that he expected his orders to be carried out, and that he was not aware that the nurses were having difficulty in following his orders.

. We do not read the dissent as disagreeing with the proposition that Lhe actions of the doctors must be viewed individually, rather than cumulatively. Rather, the dissent disagrees only with our reasoning regarding the individual acts of the doctors.

. The dissent repeatedly asserts that the doctors denied Stewart care that would have saved his life. The only evidence in the record on this point is the earlier-referenced affidavit of Dr. Rothschild, the expert for plaintiffs. After summarizing his review of Stewart’s medical records, Dr. Rothschild states: "It is my opinion that the events that ultimately led to Mr. Stewart’s demise began in August 1994 if not earlier and that the records of his care at Parchman demonstrate that facility was medically incapable or unwilling to properly care for his condition. Such care in my opinion, amounts to an indifference on the part of those in authority to take the action necessary to prevent his death, i.e., to evaluate him in a timely manner and transfer him to a facility where he could receive the necessary care.” (Emphasis added.)
It bears repeating that Dr. Rothschild’s opinion was based solely on his review of medical records. He did not, for example, review the depositions of the defendant doctors. Therefore, his conclusion that the facility was "incapable or unwilling” to provide proper care is of little, if any, probative value. Along this line, he was "awaiting additional documentation”, such as those depositions; and, ”[u]pon receipt of that information, [he] anticipate^] supplementing this report”. That supplement, if rendered, is not in the record.
In any event, the relied upon passage reflects only Dr. Rothschild's opinion that the cumulative effect of Stewart’s care may have hastened his death. Dr. Rothschild does not identify any particular actions by any of the doctors that constituted deliberate indifference; instead, he speaks of "indifference on the part of those in authority (Emphasis added.) As noted, we do not hold that there is no evidence of potentially negligent care. Rather, there is no evidence that creates a material fact issue of whether the doctors knew of Stewart’s grave condition and were deliberately indifferent to it.
Furthermore, contrary to the assertion in the dissent that a transfer to another facility would have saved Stewart’s life, Dr. Rothschild’s affidavit does not opine that Stewart would have lived if he had been treated at a different facility (based on the doctor's reviewing only the medical records, this is not suprising); and we have found no other evidence in the record slaLing that Stewart would have lived had he received the treatment tire dissent maintains was deliberately denied him.

. The dissent does not address the plaintiffs state law claims. Thus, we presume that it joins the majority opinion on this issue.