Sandra Faye **PHILLIPS**, on behalf of the wrongful death beneficiaries of Johnathan Phillips Plaintiff

v.

**MONROE COUNTY, Mississippi; Dr. Charles Farmer; and Dr. John Bearry Defendants**

No. 1:98CV313–D–D.

United States District Court, N.D. Mississippi, Eastern Division.

May 9, 2001.

James Arden Barnett, Jr., Mitchell, McNutt & Sams, Tupelo, MS, for defendant.

John L. Clay, Mississippi Attorney General's Office, Jackson, MS, for defendant.

Lamar Bradley Dillard, Mitchell, McNutt & Sams, Tupelo, MS, for defendant.

Leonard Charlton Vincent, Mississippi Department of Corrections, Parchman, for defendant.

Jim D. Waide, III, Waide & Associates, PA, Tupelo, MS, for plaintiff.

## BENCH OPINION

DAVIDSON, Chief Judge.

Presently before the court is the Defendants' motion for judgment as a matter of law, pursuant to Rule 50(a)(1) of the Federal Rules of Civil Procedure. Upon due consideration, the court finds that the motion should be granted.

### A. Factual and Procedural Background

On April 23, 2001, this case came before the court for jury trial. At the conclusion of the Plaintiff's case, the Defendants moved for judgment as a matter of law, pursuant to Rule 50(a)(1) of the Federal Rules of Civil Procedure. After viewing all the evidence presented in the light most favorable to the Plaintiff, the court finds that there is no legally sufficient evidentiary basis for a reasonable jury to find for the Plaintiff on any of her claims. As such, the court shall grant the Defendants' motion.

In this action, the Plaintiff asserts two causes of action against the Defendant Monroe County, Mississippi, one cause of action against Dr. Farmer, and one cause of action against Dr. Bearry. Specifically, the Plaintiff claims, pursuant to 42 U.S.C. § 1983, that all three of the Defendants wrongfully caused the death of her son, state inmate Johnathan Phillips (the Decedent), in violation of the Eighth and Fourteenth Amendments to the United States Constitution. Further, the Plaintiff brings a state law negligence claim against Monroe County, in connection with the same events.

The underlying facts concerning the course of the Decedent's medical treatment while he was incarcerated are largely undisputed. On May 12, 1998, the Decedent, a nineteen-year-old testicular cancer survivor, was sentenced to a term of five years in a Mississippi Department of Corrections facility following his entry of a guilty plea to a charge of aggravated assault. On May 15, 1998, the Decedent, a resident of Monroe County, reported to the Monroe County Jail to begin serving his state prison sentence. Shortly thereafter, he began complaining of chest pains, shortness of breath, headaches, and spitting up blood. Upon hearing of this, the Decedent's family contacted Tupelo oncologist Dr. Julian Hill, who advised the family members to contact someone at the Monroe County Sheriff's Department and notify them of the Decedent's need for immediate medical treatment. Pursuant to Dr. Hill's instructions, the Monroe County Sheriff's Department transported the Decedent to and from four medical appointments, two with Dr. Hill in Tupelo, and two with Dr. Woodie Herron in Aberdeen. After blood tests and a CAT scan revealed that the Decedent's cancer had reappeared, Dr. Hill advised that the Decedent needed to begin chemotherapy immediately.

Following an unsuccessful attempt to have the sentencing state Circuit Judge modify the Decedent's sentence so as to allow house arrest, Monroe County's Chief Deputy contacted Defendant Dr. Bearry,

who was the Medical Director at the Mississippi State Penitentiary at Parchman, to determine what steps should be taken. Bearry's office advised that the Decedent, who was a state prisoner, should be immediately transferred from the Monroe County Jail to the Central Mississippi Correctional Facility in Rankin County. The Decedent was so transferred on June 29, 1998, and was given an intake physical exam at the Central Mississippi Correctional Facility on July 1, 1998, by Defendant Dr. Farmer, a staff physician, who referred the Decedent to the University Medical Center in Jackson for treatment. Ordinarily, the prisoner referral process is quite time-consuming, and it often takes as long as eight weeks for a prisoner to be seen at the Medical Center. At Dr. Farmer's insistence, however, the Medical Center gave the Decedent an appointment for July 14, 1998.

On the night of July 1, 1998, after his intake physical, the Decedent began suffering from abdominal pain and vomiting. As a result, he was sent to the emergency room at the University Medical Center where he was diagnosed with pneumonia, and given antibiotics. Thereafter, on July 9, 1998, the Decedent fell unconscious in his prison cell and was immediately transported from the Rankin County facility to the University Medical Center. At the Medical Center, he was diagnosed with a brain tumor, with the Center's physicians [1] concluding that the Decedent's testicular cancer had metastasized in his brain. It was this tumor that posed the greatest and most immediate threat to the Decedent. Dr. Thigpen, and the Center's other physicians, concluded that immediate aggressive radiation therapy was necessary. Chemo-

therapy, according to Dr. Thigpen's testimony, would not have been an effective treatment for the Decedent's brain tumor. Accordingly, the Decedent received radiation therapy for his brain tumor. In spite of these efforts, the Decedent expired nine days later, on July 18, 1998, while at the Medical Center. The Decedent's Death Certificate specifies the cause of death as hemorrhage of the brain due to cancer.

### B. Standard

Rule 50(a)(1) of the Federal Rules of Civil Procedure sets forth the standard for granting judgment as a matter of law:

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

Fed.R.Civ.P. 50(a)(1).

In applying this standard, the court must consider all of the evidence in the light most favorable to the nonmovant, drawing all reasonable factual inferences in that party's favor, and leaving credibility determinations and the weighing of evidence to the jury. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149–50, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000); *Boeing Co. v. Shipman*, 411 F.2d 365, 374–75 (5th Cir.1969); *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir.2000). The court should grant

---

**1.** One of the Decedent's treating physicians was Dr. James Thigpen, who was allowed to testify out-of-turn during the trial of this cause. Although Dr. Thigpen was called out-of-turn and therefore testified during the

Plaintiff's case-in-chief, his testimony was a part of the record before the court, and would have in any event been properly considered by the court at the conclusion of the trial.

a motion for judgment as a matter of law only when "the facts and inferences point so strongly and overwhelmingly in favor of [the moving] party that the court believes that reasonable [jurors] could not arrive at a contrary verdict." *Boeing Co.*, 411 F.2d at 374.

### C. Discussion

To determine whether entry of judgment as a matter of law against the Plaintiff is appropriate, the court must ascertain if sufficient evidence exists for a reasonable jury to find that the Defendants violated the Decedent's rights under the Eighth Amendment to the United States Constitution, and whether Monroe County was negligent in its treatment of the Decedent.

#### 1. The Plaintiff's § 1983 Claims

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The United States Supreme Court has held that the Eighth Amendment's "cruel and unusual punishments" clause imposes a duty on prison officials to ensure that prisoners receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994).

■ Along this line, inadequate medical care by a prison official or doctor can result in a constitutional violation for purposes of a § 1983 claim when the official or doctor's conduct amounts to "deliberate indifference to [the prisoner's] serious medical needs, constituting the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976); *Stewart v. Murphy*, 174 F.3d 530, 533–34 (5th Cir. 1999). The Supreme Court, in *Farmer*, defined the "deliberate indifference" standard, explaining that a prison official or doctor is not liable unless he "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970; *Stewart*, 174 F.3d at 534. Further, although inadequate medical treatment may at a certain point rise to the level of deliberate indifference, medical malpractice or negligent care do not. *See Stewart*, 174 F.3d at 533 ("Deliberate indifference encompasses only the unnecessary and wanton infliction of pain repugnant to the conscience of mankind.").

The heart of the Plaintiff's § 1983 claims is that the Defendants' conduct toward the Decedent constituted deliberate indifference to his serious medical needs. Specifically, the Plaintiff asserts that the Defendants' failure to provide chemotherapy for the treatment of the Decedent's testicular cancer met this standard. The court finds, however, that neither Monroe County nor Drs. Farmer or Bearry acted with deliberate indifference to the Decedent's medical needs.

■ As for Monroe County's treatment of the Decedent, it is undisputed that the Decedent received transportation to and from four medical appointments while he was incarcerated in the Monroe County Jail, including two visits to Dr. Hill's office in Tupelo; the Decedent also received all prescribed medication in a timely fashion while he was incarcerated in Monroe County. Further, once Monroe County was told by the Department of Corrections that the Decedent was to be immediately transferred to the Central Mississippi Correctional Facility, Monroe County's Chief Deputy contacted the state facility and attempted to ensure that state personnel knew of the Decedent's cancer, and that the Decedent would receive prompt emergency medical treatment. Thereafter, the Monroe County Deputy that transferred the Decedent to the state facility took the

Decedent's medical records and hand-delivered them to officials at the state facility. And, despite the Plaintiff's assertion that Monroe County should not have agreed to transfer the Decedent to the Central Mississippi Correctional Facility, state inmates such as the Decedent do not have the right to be incarcerated in a county jail. Miss.Code Ann. § 47–5–110; *see Nicolaou v. Mississippi*, 596 So.2d 863, 864–65 (Miss.1992) ("The Mississippi Department of Corrections is vested with . . . the discretion to decide which of its institutions or facilities is appropriate for an offender.").

Following the Decedent's transfer to the Central Mississippi Correctional Facility on June 29, 1998, Monroe County had no further control over the medical care he received. And, in connection with that treatment, one of the Decedent's treating physicians, Dr. Thigpen, testified that chemotherapy during the months of June or July of 1998 would not have been an effective treatment for the Decedent's condition because the Decedent's testicular cancer had began metastasizing in his brain as early as January of 1998. And, as previously noted, chemotherapy is not an effective treatment once cancer enters the brain.

As such, the court finds that there is no legally sufficient evidentiary basis for a reasonable jury to find that Monroe County acted with deliberate indifference, as that term has been defined by the Supreme Court and the Fifth Circuit, to the Decedent's serious medical needs.

■ Dr. Bearry, the Medical Director at the Mississippi State Penitentiary at Parchman, was not one of the Decedent's treating physicians. In fact, he never had any contact whatsoever with the Decedent. It was his office, however, as a subdivision of the Department of Corrections, that instructed Monroe County to transfer the Decedent to the Central Mississippi Correctional Facility, which is the only state penal institution located near a medical center that provides chemotherapy. All state inmates that suffer from cancer and are in need of chemotherapy or similar treatment are housed at the Central Mississippi Correctional Facility due to its proximity to the University of Mississippi Medical Center.

The court finds that there is no evidence suggesting that Dr. Bearry knew of the Decedent's grave condition and responded with deliberate indifference. In fact, Dr. Bearry's office instructed Monroe County to transfer the Decedent to the only state facility where the Decedent could receive treatment for his condition. As such, the court finds that Dr. Bearry is entitled to judgment as a matter of law on the Plaintiff's claim against him.

■ Dr. Farmer, unlike Dr. Bearry, did actually see the Decedent, and gave him a physical upon his arrival at the Central Mississippi Correctional Facility on July 1, 1998. As a result of that physical, Dr. Farmer referred the Decedent to the University Medical Center for treatment; Dr. Farmer subsequently had no further contact with the Decedent, and had no further control over the medical care the Decedent received. The Medical Center gave the Decedent an appointment for July 14, 1998. As noted above, however, the Decedent was actually admitted to the Medical Center on July 9, 1998, where he remained until his death on July 18, 1998. During that time, Dr. Farmer had no control over the Decedent's medical care. Therefore, as is the case with Monroe County and Dr. Bearry, the court finds that there is no legally sufficient evidentiary basis for a reasonable jury to find that Dr. Farmer acted with deliberate indifference to the Decedent's serious medical needs.

### 2. The Plaintiff's State Law Negligence Claim

██ The State of Mississippi waives sovereign immunity for itself and its political subdivisions in section 11–46–5 of the Mississippi Code, which provides that:

> [T]he immunity of the state and its political subdivisions from claims for money damages arising out of the torts of such governmental entities and the torts of their employees while acting within the course and scope of their employment is hereby waived ...

Miss.Code Ann. § 11–46–5(1) (Supp.2000). This waiver of sovereign immunity, however, is subject to numerous exceptions. Several of these exceptions are set forth in section 11–46–9 of the Mississippi Code, which provides, in pertinent part, that:

> (1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
>
> (m) Of any claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution, regardless of whether such claimant is or is not an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution when the claim is filed.

Miss.Code Ann. § 11–46–9(1)(m) (Supp. 2000). Further, the Mississippi Supreme Court has held that this exception applies to wrongful death claims, as well as negligence claims. *Sparks v. Kim,* 701 So.2d 1113, 1114 (Miss.1997).

Here, it is undisputed that the Decedent was an inmate of a jail or penitentiary at the time of his death. As such, the Plaintiff's negligence claim against Monroe County is effectively barred by section 11–46–9(1)(m) of the Mississippi Code. Monroe County, therefore, is entitled to an entry of judgment as a matter of law on the Plaintiff's state law negligence claim.

### D. Conclusion

In sum, the court finds that judgment as a matter of law should be granted in favor of the Defendants as to all of the Plaintiff's claims.

As to the Plaintiff's state law negligence claim against Monroe County, the court finds that section 11–46–9(1)(m) of the Mississippi Code bars any such claims.

As to the Plaintiff's § 1983 claims, the court finds that there is no legally sufficient evidentiary basis for a reasonable jury to find that any of the Defendants acted with deliberate indifference to the Decedent's serious medical needs. There is no evidence that the Decedent was deliberately ignored or maltreated or that any of the Defendants committed willful wrongs or malicious acts. *See Stewart,* 174 F.3d at 532. As such, the court holds that the Defendants' motion for judgment as a matter of law pursuant to Rule 50(a)(1) of the Federal Rules of Civil Procedure should be granted.

A separate judgment and order in accordance with this opinion shall issue this day.

### JUDGMENT AND ORDER GRANTING MOTION FOR JUDGMENT AS A MATTER OF LAW

Pursuant to a bench opinion issued on April 26, 2001, and supplemented this day by written opinion, it is hereby ORDERED that

> (1) the Defendants' motion for judgment as a matter of law, pursuant to Rule 50(a)(1) of the Federal Rules of Civil Procedure, is GRANTED; and
>
> (2) JUDGMENT is entered in favor of the Defendants on all of the Plaintiff's claims.