# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-30801

United States Court of Appeals
Fifth Circuit

**FILED**

July 17, 2015

Lyle W. Cayce
Clerk

FRANCIS BRAUNER,

Plaintiff - Appellee

v.

SHIRLEY COODY, Assistant Warden;
KENNETH NORRIS, Assistant Warden;
JONATHAN ROUNDTREE, Medical Doctor;
JASON COLLINS, Medical Doctor;
UNKNOWN MCMURDO, Doctor,

Defendants - Appellants

Appeal from the United States District Court
for the Middle District of Louisiana

Before JONES, SMITH, and COSTA, Circuit Judges.
EDITH H. JONES, Circuit Judge:

A disabled Louisiana inmate sued several of his doctors and jailers, claiming they were deliberately indifferent to his serious medical condition in violation of the Eighth Amendment's prohibition on cruel and unusual punishment. The district court held perfunctorily that there was a genuine issue of material fact and denied qualified immunity, rejecting the magistrate judge's contrary recommendation. Because the record cannot support a claim of deliberate indifference, we **REVERSE** the order of the district court and **RENDER** judgment for defendants.

No. 14-30801

## BACKGROUND

Plaintiff Francis Brauner is a paraplegic incarcerated at the Louisiana State Penitentiary in Angola. Brauner resides in the R. E. Barrow Treatment Center, which is staffed at all times by doctors, nurses, and medical orderlies. A physician medical director oversees treatment and an assistant warden oversees the facility. Brauner's immobility has led to the development of decubitus ulcers, more commonly known as pressure sores or bedsores. His sores have progressed into chronic osteomyelitis, a serious and painful infection of the bone. Medical staff noted broken skin, tunneling, exposed muscle and bone, and obvious signs of infection.

Brauner sued a variety of defendants; two sets are relevant here: Assistant Wardens Shirley Coody and Kenneth Norris, who were at different times in charge of the facility itself but with no authority over medical decisions; and Drs. Jonathan Roundtree, Jason Collins, and David Hal McMurdo, all of whom treated Brauner at some point. The defendants do not deny knowledge of the existence or severity of Brauner's medical condition. Prison staff have treated Brauner in a variety of ways since January 18, 2011, the time period relevant to this case.[1]

Plaintiff sued on May 28, 2012, alleging that prison officials have been deliberately indifferent in managing his care. After some initial proceedings, the chief judge of the Middle District of Louisiana issued an order recusing all judges in the district and assigning the case to Judge Africk of the Eastern District of Louisiana (though venue remained in the Middle District). Before the reassignment, appellants moved for summary judgment on the basis of qualified immunity. In a 22-page order, the magistrate judge reviewed the evidence and concluded that circuit precedent foreclosed a deliberate

---

[1] The district court dismissed claims before that date as outside the limitations period.

2

indifference claim. Brauner supported his claims primarily with his own statements (some of which were sworn under penalty of perjury), and largely challenged the medical decisions of his doctors. Judge Africk rejected the magistrate judge's report and recommendation in a brief order holding that there were genuine issues of material fact. Appellants timely appealed.

## JURISDICTION

A district court's denial of qualified immunity is a collateral order subject to immediate appeal. Denying qualified immunity implies both "that a certain course of conduct would . . . be objectively unreasonable in light of clearly established law" and "that a genuine issue of fact exists regarding whether the defendant(s) did, in fact, engage in such conduct." *Kinney v. Weaver*, 367 F.3d 337, 346 (5th Cir. 2004) (en banc). This court has jurisdiction over the appeal only to the extent it "challenges the *materiality* of factual issues, but" not when "it challenges the district court's *genuineness* ruling—that *genuine issues* exist concerning material facts." *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 490 (5th Cir. 2001). When the basis of the district court's denial is unclear, the appellate court "can either scour the record and determine what facts the plaintiff may be able to prove at trial and proceed to resolve the legal issues, or remand so that the trial court can clarify the order." *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 456 (5th Cir. 2001).

Neither remand nor dismissal is necessary here. "The mere existence of some factual dispute is not enough to defeat this court's jurisdiction over an interlocutory appeal: If the disputed facts are not material to this legal question, 'the denial of summary judgment is [immediately] reviewable as a question of law.'" *Gonzales v. Dallas Cnty., Tex.*, 249 F.3d 406, 411 (5th Cir. 2001) (quoting *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000)) (alteration corrects omission in *Gonzales*). As will be seen, the facts in the

No. 14-30801

record before us are either undisputed or not material. *See Bazan*, 246 F.3d at 490.

## LEGAL STANDARDS

"We review the district court's summary judgment decision *de novo,* using the same standard as the district court." *Roberts v. City of Shreveport*, 397 F.3d 287, 291 (5th Cir. 2005). Once defendants assert the qualified immunity defense, "[t]he plaintiff bears the burden of negating qualified immunity . . . but all inferences are drawn in his favor." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citation omitted); *see also Ontiveros v. City of Rosenberg, Tex.*, 564 F.3d 379, 382 (5th Cir. 2009). "When, as here, the district court does not explain with sufficient particularity the factual basis justifying a denial of qualified immunity, an appellate court must examine the record, and it becomes our task to determine whether . . . each defendant was entitled to qualified immunity." *Longoria v. Texas*, 473 F.3d 586, 593 (5th Cir. 2006).

To determine that an official is *not* entitled to qualified immunity, the court must find that every reasonable officer would have understood that the alleged conduct violated a clearly established constitutional right. *Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 409 (5th Cir. 2009). The constitutional right at issue here is the Eighth Amendment's prohibition on cruel and unusual punishment, which "[p]rison officials violate . . . when they demonstrate deliberate indifference to a prisoner's serious medical needs, constituting an unnecessary and wanton infliction of pain." *Brewster v. Dretke*, 587 F.3d 764, 769 (5th Cir. 2009) (citing *Wilson v. Seiter*, 501 U.S. 294, 297, 111 S. Ct. 2321, 2323 (1991)). "Deliberate indifference is an 'extremely high' standard to meet." *Id.* at 770 (5th Cir. 2009). An official is not liable for deliberate indifference "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could

4

be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 1979 (1994). To meet his burden, "the plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).[2]

## DISCUSSION

Even taking Brauner's version of the facts as true, he cannot meet the deliberate indifference standard. This conclusion entitles appellants to qualified immunity.

Brauner's complaints fall into the following categories: 1) inadequate pain management; 2) unsanitary showers; 3) inadequate wound care; 4) denial of a slide board and special cushions; 5) failure to provide proper turning and range of motion therapy. The first three are treated below. The fourth, denial of a slide board to assist his mobility, is a matter of medical judgment that does not give rise to a claim for deliberate indifference.[3] As for the last claim,

---

[2] Because the record evidence does not support deliberate indifference, we do not reach the objective reasonableness prong of immunity analysis here. We note, however, in regard to qualified immunity, "the analysis for objective reasonableness is different from that for deliberate indifference. Otherwise, a successful claim of qualified immunity in this context would require defendants to demonstrate that they prevail on the merits, thus rendering qualified immunity an empty doctrine." *Hare v. City of Corinth, Miss.*, 135 F.3d 320, 328 (5th Cir. 1998). Thus, even if a plaintiff raises a material fact issue that the defendants' actions were deliberately indifferent, he must also show that no reasonable officer could have thought the actions appropriate. *Rankin v. Klevenhagen*, 5 F.3d 103, 108 (5th Cir. 1993). That is, appellants are entitled to summary judgment "as long as their actions could reasonably have been thought consistent with" Brauner's right to be free from cruel and unusual punishment. *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S. Ct. 3034 (1987).

[3] The medical professionals at the prison determined that the board was not medically necessary since orderlies and nurses were available to assist Brauner with moving from bed to chair.

Brauner did not object to the magistrate judge's findings that he "ma[de] no allegations whatsoever with respect to the denial of adequate range of motion therapy" and that his proper-turning claim was equally defective. The district court's rejection of the magistrate judge's report makes it unclear whether Brauner failed to preserve this objection, but in any case, the magistrate judge's analysis is correct.[4]

### A. Medication

Brauner first complains about the pain medication his doctors prescribed. There is no dispute that he is in pain. Even if there were some improprieties in the management of Brauner's pain, they would not rise to the level of deliberate indifference. Brauner's brief is replete with examples of attentive and varied treatment from his physicians: he does not challenge the doctors' testimony that they each prescribed him various prescription and over-the-counter pain medicine. Brauner argues "that he required more than mere over-the-counter [medication] to abate his pain[.]" Besides the fact that he *received* more than mere over-the-counter medication—Brauner himself mentions prescriptions for Lortab, Parafon Forte, Valium, methadone, ibuprofen, acetaminophen, Neurontin, and baclofen—these are "classic example[s] of a matter for medical judgment." *Estelle v. Gamble*, 429 U.S. 97, 107, 97 S. Ct. 285, 293 (1976).

We now briefly examine Brauner's allegations against each doctor. He testified that Dr. Roundtree only prescribed him methadone,[5] despite his protests that it makes him violently ill, and over-the-counter medication.

---

[4] Brauner's only argument on appeal is that since it is obvious that his condition would deteriorate without proper turning, the officials can be held liable under a supervisory theory. He did not explain to the magistrate judge how the defendants were deliberately indifferent, nor does he explain it to us.

[5] Methadone is an opioid narcotic used to treat moderate to severe pain.

Dr. Roundtree stated in his affidavit that he discontinued Brauner's Lortab[6] prescription because prison officials suspected the prisoner was distributing the pills rather than using them for his pain.[7]  Further, Brauner's medical records show that another doctor indicated, on February 17, 2011, that Brauner "started on methadone 1 yr ago that's when his nausea started, it was d/ced [discontinued] [chang]ed to MS Contin."  The MS Contin was also discontinued and he was started on Lortab.  And even if Dr. Roundtree had kept Brauner on the methadone, he also treated him for nausea.  These facts refute Brauner's assertion that the doctors cruelly prescribed methadone in order to inflict him with nausea.  The alleged actions do not constitute deliberate indifference.

With respect to Dr. MacMurdo, Brauner first points to his own testimony that Dr. MacMurdo "never prescribed pain medication," then he affirmatively states that Dr. MacMurdo prescribed him Neurontin.[8]  Brauner argues in his brief that "testimonial discrepancies . . . create a genuine issue of material fact."  But his own facts contradictory facts demonstrate at most that there was a brief period of time during which he was not on prescription pain medication.  A medical doctor is entitled—obliged, even—to change a patient's prescription in response to suspected misuse, addiction, or abuse.  Doing so is not deliberate indifference.

---

[6] Lortab is the brand name of combination hydrocodone bitartrate and acetaminophen, similar to Vicodin.

[7] In his appellate brief, Brauner says this accusation "is itself suspect given that Plaintiff is a paraplegic, is generally confined to his bed, and testified that he had never distributed his medication to others."  The question is not the correctness of the accusation, but the basis for the doctor's decision.

[8] Neurontin is a brand name for gabapentin, used to treat pain from shingles and other nerve disorders.

No. 14-30801

Brauner alleges that he sent several complaint letters to Dr. Collins, who was for a time the medical director at the Barrow Treatment Facility. Dr. Collins testified by affidavit that he consulted a neurologist who informed him that Brauner's claim of pain below the waist "was not possible;" he therefore prescribed Neurontin for any residual nerve pain and discontinued Lortab. Acting on advice of a specialist and prescribing medication to treat a patient is not deliberate indifference. *See Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

Deliberate indifference is not established when "medical records indicate that [the plaintiff] was afforded extensive medical care by prison officials[.]" *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). Brauner's history of complaints and the doctors' refusal to accommodate his requests in the manner he desired do not change this calculus. *See Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992) ("The treatment may not have been the best that money could buy, and occasionally, a dose of medication may have been forgotten, but these deficiencies were minimal, they do not show an unreasonable standard of care, and they fall far short of establishing deliberate indifference by the prison authorities."). As a matter of law, these doctors were not deliberately indifferent in their treatment of Brauner's pain.

## B. Unsanitary Showers

Brauner also complains about the state of the showers and the irregularity of his bed bathing. The magistrate judge cited the undisputed testimony of the doctors and a non-defendant nurse, who testified that the showers were cleaned twice a day with bleach, that Brauner was given a disinfectant spray bottle for his personal use, and that Brauner was permitted to enter the showers before the other prisoners so that he could clean himself without interference. Further, Brauner was permitted to bathe in his bed and often did so. The magistrate judge also found that Brauner "presented no

competent summary judgment evidence to rebut the defendants' evidence" and had not demonstrated how the "purported conditions pose any significant risk to him[.]"   Brauner cites a long list of days on which he was allegedly not cleaned, but it is difficult to know what to make of the records he cites, in part because it is not clear that the bathing records are exhaustive.  It is undisputed that at no point was Brauner prohibited from using the showers.

Even if Brauner's facts are taken as true, the most that can be said is that the prison failed to maintain perfectly germ-free showers, which is not cruel and unusual punishment.  Prison policy was for the showers to be cleaned twice a day with bleach.   Brauner's attempt to use this policy to show defendants' knowledge of the "unsanitary conditions" is perplexing.  Brauner asserted that a nurse told him not to use the showers "with your open wounds like that" because no amount of cleaning would "kill what's in that shower." Putting aside possible hearsay problems in this testimony, it shows only that a nurse had opinions about the prison's ability to maintain the showers and was concerned enough about Brauner to advise him to avoid using them.  The evidence, again, does not rise to the level of deliberate indifference.

### C. Wound Care

In his appellate brief, Brauner argues that the doctors and wardens were deliberately indifferent in failing to supervise and train subordinates in proper wound care.  As appellants note, Brauner does not dispute "that each doctor prescribed appropriate wound care[.]"  Since the doctors, of course, do not normally personally change the patients' bandages, Brauner must rely on a theory of supervisory liability.

We have held that "doctors may not be held liable for § 1983 violations under a theory of respondent superior or vicarious liability, based upon claimed omissions by the nurses." *Stewart v. Murphy*, 174 F.3d 530, 536 (5th Cir. 1999). A supervisor can, however, be held liable when he was himself deliberately

indifferent. In order to hold a defendant supervisor liable on such a theory, "the plaintiff must show that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998). Thus, Brauner would have to create a genuine issue of material fact that the doctors and wardens failed to supervise or train the subordinate officials. He would then have to create a genuine fact issue that the doctors knew the nurses were disregarding their orders, and the doctors neglected to correct this behavior knowing it posed an actual serious risk to Brauner's health. His evidence is lacking on these points.

Brauner asserts that the doctors "likely knew of the staff's deficient wound care for several reasons." These reasons are Brauner's repeated complaints and "the prolonged period of time Plaintiff suffered with decubiti[.]" But Brauner's own evidence shows that even if his wound care was occasionally sporadic, the doctors were active in managing it. There may be a fact issue as to whether the staff skipped some wound treatments, since the records are simply blank on those days. But this is not material to the deliberate indifference claim. Brauner's extensive summary of dressing changes demonstrates that his dressings were changed frequently if not exactly as prescribed, and the doctors regularly changed the prescribed frequency in response to the up-and-down condition of the sores. Appellants' testimony, which Brauner fails to contest in large part, demonstrates that his doctors wrote wound care orders, ordered cultures, placed him on vitamin and antibiotic therapy regimens to assist with healing, and escalated wound treatment strategies when necessary. That is, even if "subordinates were persistently delinquent in their duties," as Brauner asserts, this is not the same as showing either that Brauner's rights were violated or that the doctors

were deliberately indifferent as supervisors, both of which are required under *Brenoettsy*.

Brauner relies on the magistrate judge's "liberal construction" of his complaint as stating a claim for supervisory liability against the assistant wardens.  Granting this liberality, however, the magistrate judge was also correct that these claims are not viable.  As described above, Brauner does not establish that any right was violated.  He was at all times prescribed medication and wound treatments, and he had access to showers that the prison regularly cleaned.  The wardens could not have known about constitutional violations, since there were no constitutional violations.  Further considering that the medical professionals made all treatment decisions, there is no basis on which to find the wardens liable.

One piece of non-testimonial evidence adduced by the parties is noteworthy regarding the supervisory liability claim.  In his request for administrative remedy, Brauner related that during evacuation due to flooding, nurses asked him whether his dressing had been changed.  He said no.  The nurses told Assistant Warden Coody, who ordered Nurse Chuck to return and do the dressing change.  This is the exact opposite of supervisory deliberate indifference: it is an example of supervisory diligence *correcting* subordinate negligence.

### D. Precedent

Finally, these conclusions are supported by Fifth Circuit precedent finding no deliberate indifference in similar cases.

One recent example is *Gobert v. Caldwell*, 463 F.3d 339 (5th Cir. 2006), in which the plaintiff also suffered from pressure sores.  There, as here, the doctor had knowledge of the prisoner's condition and the substantial risk attending nontreatment.  But the evidence at best demonstrated that the medical staff had been negligent for a short time during the prisoner's

treatment.  And as in that case, the medical records cited by both parties here show pain medication, wound management, mobility treatment, and antibiotic therapy during the relevant time periods.  Brauner's evidence does not rise even to *Gobert*'s level, where there was no deliberate indifference.

In *Stewart v. Murphy*, another pressure-sores deliberate-indifference case, the court acknowledged "independent acts of negligence" by various physicians.  One of the attending physicians "did not read the nurses' notes, which indicated that Stewart had an infection from a catheter, and he did not prescribe antibiotics." *Stewart v. Murphy*, 174 F.3d 530, 535-36 (5th Cir. 1999).  The evidence also showed that the patient, admittedly quite ill, was not seen over the four-day Thanksgiving holiday.  *Id.* at 536.  One doctor said it looked as though the inmate would die, but "did not transfer [the prisoner] to another facility for physical therapy, or read the nurses' notes, or administer antibiotics." *Id.*  Later, the prisoner died from sepsis caused by his decubitus ulcers.  *Id.*  This court held that "at worst, these actions might constitute negligence, not the requisite deliberate indifference." *Id.*

The negligence in *Gobert* and *Stewart* did not present deliberate indifference.  *A fortiori*, since Brauner has not even created a genuine material fact issue concerning negligence or medical malpractice, these defendants are entitled to qualified immunity.

## CONCLUSION

The district court order does not identify the factual disputes that preclude summary judgment on the basis of qualified immunity, even though the magistrate judge's report makes a strong case to the contrary.  In such circumstances, we have sometimes found it appropriate to vacate and remand for clarification.  *See Thompson*, 245 F.3d at 456; *Kinney*, 367 F.3d at 348.  This is not necessary here.  Because the record does not support a claim for

deliberate indifference, we **REVERSE** and **RENDER** judgment for these defendants.