**Revised October 29, 1998**

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 98-60102

_____

MONDRIC BRADLEY

Plaintiff - Appellant,

VERSUS

STEVE W. PUCKETT, Commissioner; JAMES V. ANDERSON, Superintendent, MISSISSIPPI
STATE PENITENTIARY; EARL JACKSON, Case Manager; JOHN DIAL, Dr.;  JAMES
DORSON, Lieutenant; JOE HOLMAN, Lieutenant; D. JACKSON, Lieutenant; BASS, Sergeant;
TOMMIE TOWER, Sergeant; ANN LEE, Classification Director; ETHEL CARLIZE,
Disciplinary Chairperson; EDWARD QUEEN, Case Manager

Defendants - Appellees.

_____

On Appeal from the United States District Court for the Northern District of Mississippi

_____

October 26, 1998

Before REYNALDO G. GARZA, JONES, and DeMOSS, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

### *Factual Background*

On September 5, 1996, Mondric Bradley, Mississippi prisoner No. 46406, filed a civil

rights lawsuit pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights had been

violated by various prison officials.  In April 1996, Bradley received a rule violation report after

being found in possession of a homemade knife.  Following a disciplinary hearing, his custody

status was reduced to close confinement.

Bradley is disabled and wears a leg brace, rendering it dangerous for him to take a shower without a shower chair. Bradley contends that even though the prison officials were aware of his disability, they knowingly placed him in lockdown without the essentials needed to sanitize himself. Bradley alleges that the prison officials were deliberately indifferent to his medical needs and that his inability to shower for over two months constituted cruel and unusual punishment in violation of his equal-protection rights.

The magistrate judge ordered that an evidentiary hearing be held, pursuant to *Spears v. McCotter*, prior to service of process on the named defendants. At the *Spears* hearing Bradley testified that, because of his disability, he needs assistance to dress and undress himself and that he needs a shower chair to prevent him from falling in the shower. He stated that after he was locked down, he complained about his inability to clean himself, but that the prison officials ignored his complaint. Bradley testified that in order to clean himself he used the toilet in his cell, which ultimately gave him a fungal infection and blisters. He stated that after he came down with the infection and after several complaints, his infection was treated and officials began to take him to the medical clinic to use the bathtub and special shower facilities.

Bradley testified that he had gone several months without being able to clean himself before he was provided with the opportunity to bathe. He stated that he is now taken to bathe on Mondays, Wednesdays, and Fridays, but that the officers do not take him at a specific time of day.

At the conclusion of the hearing, the magistrate judge stated:

I don't want you to think the Court is not sympathetic to your disability problem but the disability that you suffer from does not make you immune from the disciplinary procedures at the prison. . . . You're not entitled, disability or otherwise, to any specific housing assignment. If you violate the rules of the prison, you can be placed in lockdown. The prison -- part of the hygiene is a person's own responsibility, it's not all the responsibility of the prison. The prison

2

now has made reasonable accommodations for you disability. They've treated the rash that you developed and I find that there is no basis in fact for your -- to a constitutional level and I'm going to recommend that your case be dismissed.

The magistrate judge subsequently issued a written report and recommendation that Bradley's lawsuit be dismissed. The magistrate judge specifically found that the prison officials remedied the situation as soon as they were informed of Bradley's complaints, that Bradley's "discomfort was short-lived," and that he received prompt medical care for his rash. He therefore concluded that Bradley had failed to state a cause of action cognizable under 42 U.S.C. § 1983.

Bradley objected to the magistrate judge's recommendation. He specifically objected to the findings that the prison officials corrected the problem as soon as they were made aware of it. Bradley contended that the officials were cognizant of his medical needs prior to placing him in lockdown and they allowed him to remain in unsanitary conditions despite his complaints. The district court overruled Bradley's objection and adopted the magistrate judge's findings and conclusions. The district court specifically found that the prison officials took immediate steps to correct the situation as soon as they were apprised of Bradley's needs. Therefore, it held that no constitutional violation had occurred and ordered that Bradley's complaint be dismissed for failure to state a claim. Bradley filed a timely notice of appeal.

### *Discussion*

The Prison Litigation Reform Act (PLRA) amended § 1915 to require the district court to dismiss in forma pauperis (IFP) a prisoner's civil rights suit if the court determines that the action is frivolous or malicious or does not state a claim upon which relief maybe granted. 28 U.S.C. (e)(2)(B)(i) & (ii); *see also*, § 1915A(b)(1). The district court did not cite any authority for its dismissal of Bradley's complaint, however, § 1915(e)(2)(B)(ii) is the most appropriate authority

3

for the district court's dismissal.

This Court reviews the district court's dismissal under 28 U.S.C. § 1915(e)(2)(B)(ii) *de novo*, applying the same standard used to review a dismissal pursuant to FED. R. CIV. P. 12 (b)(6). *Black v. Warren*, 134 F.3d 732, 733 (5th Cir. 1998). To test whether the district court's dismissal under § 1915 was proper, this Court must assume that all of the plaintiff's factual allegations are true. *Ashe v. Corley*, 992 F.2d 540, 544 (5th Cir. 1993). The district court's dismissal may be upheld, "only if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations." *McGrew v. Texas Bd. of Pardons & Paroles*, 47 F.3d 158, 160 (5th Cir. 1995); s*ee also, Estelle v. Gamble*, 429 U.S. 97, 105 (1976) (holding that a complaint can only be dismissed for failure to state a claim if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief).

Accepting Bradley's allegations as true, the district court erred in dismissing his complaint for failure to state a claim. Bradley has a valid claim to the extent that he complains of unsanitary conditions that deprived him of basic human needs and exposed him to health risks.

For conditions of confinement to rise to the level of an Eighth Amendment violation, they must be "cruel and unusual" under contemporary standards. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society. *Id*. However, when the restrictions of confinement rise to a level that results in physical torture, it can result in pain without penological purpose constituting cruel and unusual punishment under the Eighth Amendment. *Id.* It is the "obduracy and wantonness, not inadvertence or error in good faith, that

4

characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Thus, the prison official's state of mind must be examined to determine whether the undue hardship endured by the prisoner was a result of the prison official's deliberate indifference. *Wilson v. Seiter*, 501 U.S. 294 (1991). To establish deliberate indifference in the context of the Eighth Amendment, the prisoner must show that the defendants (1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of a substantial risk. *Id.* at 842 & n.8.

The district court erred in determining that Bradley had not alleged facts sufficient to meet the required showing to proceed with his claim. Bradley asserts that he was unable to bathe for several months, that prison officials were aware of his special needs but deliberately ignored them, that he was therefore forced to clean himself using toilet water, and that the unhygienic conditions resulted in a fungal infection which required medical attention. Therefore, Bradley alleges that the unsanitary conditions violated contemporary standards of decency which threatened his physical and mental well-being, resulting in the unnecessary infliction of pain and exposure to egregious physical conditions. It is irrelevant whether the risk came from a particular source or whether a prisoner faced the risk for reasons personal to him. *Id*. at 826. Bradley's complaint must be measured in light of his personal disability, which rendered it especially risky for him to fulfill a

basic human need. *Id.*

It is unclear on what basis the district court determined that Bradley's discomfort was short-lived and that the prison officials took immediate corrective steps. Bradley alleges that he was unable to bath for several months. The magistrate judge found that the first recorded complaint that Bradley made to the prison doctor was logged in his medical records on June 17, 1996. Based on this finding, the magistrate judge apparently concluded that the prison officials had no prior notice and that they took immediate corrective action thereafter to provide Bradley with an opportunity to bathe.

Bradley has consistently asserted that the prison officials were aware of his medical needs when they placed him in lockdown. He contends that they wantonly failed to take any corrective action until numerous complaints were made. Bradley has provided documentation regarding the numerous complaints he lodged. The prison records that Bradley attached to his complaint reveal that he was not provided with a regular bathing schedule and that action was not taken until approximately July 15, 1996.

Thus, the district court's finding that prison officials took immediate corrective action is unexplained. There was no testimony at the *Spears* hearing to that effect and such a finding runs contrary to the allegation of the complaint. Moreover, the mere fact that prison officials subsequently took corrective action by taking Bradley to the clinic to bathe does not negate his claim for the harm he actually incurred. Bradley alleges and the documents he attached to his complaint indicate that he was deprived of the opportunity to clean himself from approximately May 15, 1996, when he was placed on lockdown status, until approximately July 15, 1996, when the prison provided him with a regular schedule for bathing at the clinic. Thus, under his theory

6

that prison officials were aware of his needs when they changed his custody conditions, he was knowingly deprived of sanitary conditions for approximately two months. However, even if the prison officials were not put on notice until Bradley's first medical request on June 16, 1996, Bradley's complaint indicates that the prison did not correct the problem until approximately one month later.

The facts alleged by Bradley, if proven, may warrant relief under the Eighth Amendment. *Id.* at 837. His complaint states a claim for cruel and unusual punishment and the district court erred by dismissing it for failure to state a claim. Accordingly, we VACATE the district court's order and REMAND this case for further proceedings consistent with this opinion.