United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 3, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 04-11330
_____


SELDEN ATTEBERRY, Individually and as Representative of the
Estate of Barbara Atteberry; STACY ATTEBERRY; INDIA
ATTEBERRY, Individually, And As Next Friend of Lydia Diane
Weatherread (a/k/a Lydia Chapmon), a Minor Child; CECILIA
NMI MORGAN, Individually and as Representative of the Estate
of Donna Sue Curnutte; CHARLEY CURNUTTE; CHARLEY B CURNUTTE;
KATHY WEAVER, As Representative of the Estate of William J
Griffin and as Attorney-in-Fact for Ellawean Griffin

Plaintiffs - Appellees

v.

NOCONA GENERAL HOSPITAL; ET AL

Defendants

CHARLES R NORRIS; BARBARA JEAN PERRY

Defendants - Appellants

_____
Consolidated with 04-11387

SHIRLEY JEANETTE HOLDER, Individually and as Independent
Executor of and Heir to the Estate of Jimmy Ray Holder

Plaintiff - Appellee

v.

NOCONA GENERAL HOSPITAL; ET AL

Defendants

CHARLES R NORRIS; BARBARA JEAN PERRY

Defendants - Appellants

_____
Consolidated with 04-11388

DOIS WAYNE JACKSON, Individually and as Representative of
the Estate of Everett Ethridge Jackson; YVONNE W JACKSON

Plaintiffs - Appellees

v.

NOCONA GENERAL HOSPITAL; ET AL

Defendants

CHARLES R NORRIS; BARBARA JEAN PERRY

Defendants - Appellants
_____
Consolidated with 04-11390

BILLIE J HUGGINS, Individually and as Representative and
Temporary Administrator of the Estate of Dorothy Jean
Vanderburg; ESTATE OF DOROTHY JEAN VANDERBURG

Plaintiffs - Appellees

v.

NOCONA GENERAL HOSPITAL; ET AL

Defendants

CHARLES R NORRIS; BARBARA JEAN PERRY

Defendants - Appellants
_____
Consolidated with 04-11391

CAROL JEAN JAMES

Plaintiff - Appellee

v.

NOCONA GENERAL HOSPITAL; ET AL

Defendants

CHARLES R NORRIS; BARBARA JEAN PERRY

Defendants - Appellants
_____

2

Consolidated with 04-11392

BETTY MILLER, Individually and as Executrix of the Estate of Alma Dixon, Deceased; ELAINE CURTISS; DAVID DIXON; RICK DIXON; REENE MCCAFFERY; GLADYS BOURGE

Plaintiffs - Appellees

v.

NOCONA GENERAL HOSPITAL; ET AL

Defendants-Appellants

_____

Consolidated with 04-11394

HARRY DON REID, Administrator of the Estate of Donnelly Reid, Deceased

Plaintiff - Appellee

v.

NOCONA GENERAL HOSPITAL; ET AL

Defendants

CHARLES R NORRIS; BARBARA JEAN PERRY

Defendants - Appellants

_____

Consolidated with 04-11395

BARBARA GAY NICHOLS RECTOR, Individually and as Legal Representative and Administrator of the Estate of J T Nichols; CLIFFORD NICHOLS, Individually and as Heir to the Estate of J T Nichols; MICHAEL NICHOLS, Individually and as Heir to the Estate of J T Nichols

Plaintiffs - Appellees

v.

NOCONA GENERAL HOSPITAL; ET AL

Defendants

CHARLES R NORRIS; BARBARA JEAN PERRY

Defendants - Appellants

_____

Consolidated with 04-11396

3

HAROLD GENE VANDERBURG, Individually and as Heir of the Estate of Dorothy Jean Vanderburg; ESTATE OF DOROTHY JEAN VANDERBURG

               Plaintiffs - Appellees

    v.

NOCONA GENERAL HOSPITAL; ET AL

               Defendants

CHARLES R NORRIS; BARBARA JEAN PERRY

               Defendants - Appellants

_____

Consolidated with 04-11397

CHARLES WILLIAMS, Individually and as Representative of the Estate of John Walter Williams; RICHARD WILLIAMS, Individually and as Representative to the Estate of John Walter Williams; DALLAS WILLIAMS, Individually and as Representative of the Estate of John Walter Williams

               Plaintiffs - Appellees

    v.

NOCONA GENERAL HOSPITAL; ET AL

               Defendants

CHARLES R NORRIS; BARBARA JEAN PERRY

               Defendants - Appellants

_____

Appeals from the United States District Court
for the Northern District of Texas

_____

Before KING, Chief Judge, and BARKSDALE and CLEMENT, Circuit Judges.

KING, Chief Judge:

In this consolidated interlocutory appeal, defendants-appellants Charles R. Norris and Barbara Jean Perry challenge the district court's denial of their motions to dismiss. For the reasons stated below, we AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

The plaintiffs-appellees (the "Plaintiffs") in this consolidated appeal are relatives or representatives of eleven deceased patients and one surviving minor patient (collectively, the "patients") at Nocona General Hospital ("Nocona" or the "Hospital"), a small hospital in Nocona, Texas. The Plaintiffs allege that Vickie Jackson ("Nurse Jackson"), a nurse at the Hospital, willfully deprived the patients of life and liberty interests by injecting them with a paralytic drug named Mivacron.[1] The Plaintiffs claim that Nurse Jackson repeatedly stole Mivacron from hospital crash carts[2] and used it to kill as many as twenty-two patients between November 2000 and February 2001.

---

[1] The relevant alleged timeline is attached in an Appendix to this opinion.

[2] A crash cart can be defined as "[a] movable collection of emergency equipment and supplies meant to be readily available for resuscitative effort. It includes medication as well as the equipment for defibrillation, intubation, intravenous medication, and passage of central lines." Stedman's Medical Dictionary 422 (27th ed. 2000).

Defendant-appellant Charles R. Norris ("Norris") is alleged to have been the Hospital Administrator at Nocona during the relevant time period, with general administrative and supervisory authority over the hospital staff and policymaking authority over drug storage and medical care. Defendant-appellant Barbara Jean Perry ("Perry") is alleged to have been the Director of Nursing at Nocona during the relevant time period, with supervisory and training authority over Nurse Jackson.

## B. Procedural Background

In January and February of 2003, the Plaintiffs filed suits in the Northern District of Texas against Nurse Jackson, the Hospital, Norris, Perry, and eleven other defendants. The Plaintiffs claimed Nurse Jackson's actions deprived the patients of their substantive due process rights to life and liberty. See U.S. CONST. amend. XIV; see also Doe v. Taylor Indep. Sch. Dist., 15 F.3d 443, 450-51 (5th Cir. 1994) (en banc) (recognizing the due process "right to be free of state-occasioned damage to a person's bodily integrity") (internal citation omitted). The Plaintiffs claimed that the Hospital, Norris, Perry, and the other defendants were liable for these constitutional violations based on their conscious or deliberate indifference to the activities of Nurse Jackson, the disappearing Mivacron from the crash carts, and the ever-increasing number of unexplained deaths.

6

Beginning in April of 2003, multiple defendants (including Norris and Perry) filed motions to dismiss under FED. R. CIV. P. 12(b)(6), attacking the sufficiency of the Plaintiffs' pleadings and asserting the defense of qualified immunity. After consolidating the cases and sending them to a magistrate judge for pretrial management, the district court denied the defendants' motions to dismiss, adopting the magistrate judge's conclusion that the Plaintiffs had stated a § 1983 claim against some defendants, including Norris and Perry.[3] The district court also declined to resolve the defendants' respective rights to qualified immunity, adopting the magistrate judge's recommendation that a "[d]etermination of the Qualified Immunity of these defendants should abide" the resolution of factual issues "upon completion of discovery, summary judgment or trial." Atteberry v. Nocona Gen. Hosp., No. 7:03-CV-034-R, at 21-22 (N.D. Tex. Sep. 8, 2004) (mem.).

Defendants Norris and Perry appeal the denial of their 12(b)(6) motions to dismiss.[4] We hold that the district court

---

[3]     Adopting the magistrate judge's recommendations in their entirety, the district court dismissed all of the Plaintiffs' state-law negligence claims for filing in state court. The district court also dismissed the Plaintiffs' § 1983 claims with respect to some of the original defendants.

[4]     In June of 2005 these appeals were consolidated, and a prior unpublished opinion affirming the district court's decision with respect to one individual appeal was withdrawn in order to permit the consolidated appeals to be considered simultaneously. See Jackson v. Nocona Gen. Hosp., 132 Fed. Appx. 540 (5th Cir. May 31, 2005).

correctly concluded that qualified immunity will not protect the conduct alleged in the pleadings in this case, and we affirm the district court's denial of Norris's and Perry's 12(b)(6) motions to dismiss on the basis of qualified immunity.

## II. APPELLATE JURISDICTION AND STANDARD OF REVIEW

"[A]n order denying qualified immunity, to the extent it turns on an 'issue of law,' is immediately appealable." Behrens v. Pelletier, 516 U.S. 299, 311 (1996) (quoting Mitchell v. Forsyth, 472 U.S. 511, 530 (1985)). Our jurisdiction in this context extends to interlocutory appeals taken from both denials of motions to dismiss and denials of motions for summary judgment. See Behrens, 516 U.S. at 307 (stating that "an order rejecting the defense of qualified immunity at either the dismissal stage or the summary judgment stage is a 'final' judgment subject to immediate appeal"). Specifically, the denial of a motion for dismissal on qualified immunity grounds falls into that

> "small class" of district court decisions that, though short of final judgment, are immediately appealable because they "finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated."

Behrens, 516 U.S. at 305 (quoting Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546 (1949)).

8

When reviewing a denial of qualified immunity on an interlocutory appeal, we are restricted to determinations "of question[s] of law" and "legal issues," and we do not consider "the correctness of the plaintiff's version of the facts." Mitchell, 472 U.S. at 528. The "'essentially legal [immunity] question,'" which we treat as an entitlement "distinct from the merits" of the case, is appealable only "'to the extent that it turns on an issue of law . . . .'" Behrens, 516 U.S. at 306 (quoting Mitchell, 472 U.S. at 526, 530) (omission in Behrens). Only these issues of law qualify as appealable "final decisions" before a final judgment. See id.

We review "the district court's refusal to dismiss [the complaint] on the basis of qualified immunity de novo." Wilkerson v. Sadler, 329 F.3d 431, 434 (5th Cir. 2003) (emphasis omitted); see also Morin v. Caire, 77 F.3d 116, 119-20 (5th Cir. 1996) (stating, in a similar qualified immunity context, that a district court's ruling on a motion to dismiss is subject to de novo review). In applying this standard, we accept "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999) (citing Doe v. Hillsboro Indep. Sch. Dist., 81 F.3d 1395, 1401 (5th Cir. 1996)). Dismissal is inappropriate "unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with

9

the allegations in the complaint." Jones, 188 F.3d at 324 (citing Vander Zee v. Reno, 73 F.3d 1365, 1368 (5th Cir. 1996)).

Some of the Plaintiffs argue that this court lacks jurisdiction over this appeal, citing Smith v. Brenoettsy, 158 F.3d 908 (5th Cir. 1998). In Smith, we addressed an appeal of the district court's denial of a summary judgment motion asserting qualified immunity. See Smith, 158 F.3d at 911-13. These Plaintiffs claim that in Smith, this court concluded it lacked interlocutory jurisdiction because each of the grounds for appeal raised factual questions rather than legal questions. Id. Based on this characterization of Smith, these Plaintiffs contend that we lack jurisdiction over this appeal because Norris and Perry raise arguments related to their awareness of certain facts at the time of the patients' deaths.

These Plaintiffs are mistaken in both their argument and their characterization of Smith. The resolution of the legal questions appropriate to an interlocutory appeal involving qualified immunity will necessarily entail some mention of the related factual allegations in the complaints. See Mitchell, 472 U.S. at 528-29. Jurisdiction over an interlocutory appeal from a denial of a summary judgment motion failed in Smith because the Smith appellant did not raise sufficient legal issues separable from the facts or the ultimate merits of the case.[5] See Smith,

_____

[5] In fact, the appellant in Smith simply presented disputed facts without reference to any substantive legal

10

158 F.3d at 912-13 (concluding that "none of the separable legal issues identified by [the appellant] are sufficient for us to grant summary judgment in his favor"). Unavoidable references to the underlying facts of a case do not spoil our jurisdiction over a properly composed interlocutory appeal.

## III. DISCUSSION

To state a claim under 42 U.S.C. § 1983, a plaintiff must first show a violation of the Constitution or of federal law, and then show that the violation was committed by someone acting under color of state law. See, e.g., West v. Atkins, 487 U.S. 42, 48-50 (1988); Piotrowski v. City of Houston, 51 F.3d 512, 515 (5th Cir. 1995). The district court adopted the magistrate judge's recommendation that the Plaintiffs sufficiently alleged that the hospital was a state governmental entity, that Nurse Jackson was a state actor, and that she had committed a constitutional violation while acting under color of law. The district court also adopted the magistrate judge's recommendation that the Plaintiffs pleaded facts sufficient to impose liability on Norris and Perry.

---

analysis or authority. See Smith, 158 F.3d at 912-913 (stating that "[the appellant] provides no legal support for this [first] argument" and "[the appellant] presents no authority to support his [second] argument"). The substantive legal arguments provided by Norris and Perry in this appeal, although ultimately unsuccessful, are different in kind from those described in Smith.

11

A qualified immunity defense "serves to shield a government official from civil liability for damages based upon the performance of discretionary functions if the official's acts were objectively reasonable in light of then clearly established law." Thompson v. Upshur County, 245 F.3d 447, 456 (5th Cir. 2001); see also Kinney v. Weaver, 367 F.3d 337, 349 (5th Cir. 2004) (en banc) (discussing the important goals served by the qualified immunity doctrine). "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam).

To discharge this burden, a plaintiff must satisfy a two-prong test. First, he must claim that the defendants committed a constitutional violation under current law. See, e.g., Wilson v. Layne, 526 U.S. 603, 609 (1999); Palmer v. Johnson, 193 F.3d 346, 351 (5th Cir. 1999). Second, he must claim that the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of. See id. This bifurcated legal standard is designed both to promote clearer standards for official conduct and to spare defendants unwarranted liability and court costs. See Wilson, 526 U.S. at 609.

Norris and Perry contend that dismissal is appropriate because the Plaintiffs have failed each prong of the test.

12

First, Norris and Perry claim that the Plaintiffs failed to allege a constitutional violation because they have not sufficiently alleged that either official acted with deliberate indifference to the patients' constitutional rights as determined by current law. Second, Norris and Perry claim that the Plaintiffs have not sufficiently alleged that either official acted objectively unreasonably in light of the law that was clearly established at the time of the alleged murders. Prudence suggests that these qualified immunity claims should be addressed separately for Norris and Perry.[6] See Jacobs v. W. Feliciana Sheriff's Dept., 228 F.3d 388, 395 (5th Cir. 2000).

## A.    Constitutional Violation

At issue in this appeal is whether the Plaintiffs sufficiently alleged that Norris and Perry may be held liable for Nurse Jackson's alleged violation of the patients' constitutional rights. See Hernandez v. Tex. Dep't of Protective & Regulatory

---

[6]    The district court sufficiently analyzed the Plaintiffs' allegations with respect to both Norris and Perry. Specifically, the district court adopted the magistrate judge's recommendation that the Plaintiffs sufficiently alleged that Norris had "general administrative and supervisory duties with respect to the hospital staff, including Nurse Jackson, and policy making duties and authority with respect to the drug cart, training of nurse employees, and the administration of medical care to patients at the Hospital." Atteberry v. Nocona Gen. Hosp., No. 7:03-CV-034-R, at 18 (N.D. Tex. Sep. 8, 2004) (mem.). With respect to Perry, the district court adopted the magistrate judge's recommendation that the Plaintiffs "adequately alleged [her] to be a potential 'state actor' having a sufficient alleged policy making control over Nurse Jackson and her actions." Id. at 19-20.

13

<u>Servs.</u>, 380 F.3d 872, 880 (5th Cir. 2004) (determining, as an initial matter in a similar appeal, whether the alleged deprivation of constitutional rights could be ascribed to social workers in supervisory roles); <u>Doe v. Rains County Indep. Sch. Dist.</u>, 66 F.3d 1402, 1406-07 (5th Cir. 1995) (outlining a three-step approach for "drawing the circle of liability" in a similar appeal and attempting to determine whether the alleged deprivation of constitutional rights could be ascribed to school officials in supervisory roles); <u>Taylor</u>, 15 F.3d at 452 (determining, as an initial matter in a similar appeal, whether supervisory school officials were liable for alleged breaches of constitutional rights committed by subordinate employees). Specifically, this court must determine whether the allegations of the complaints support supervisory liability on the part of Norris and Perry when their subordinate, Nurse Jackson, violated the patients' constitutional rights. <u>See, e.g.</u>, <u>Rains County Indep. Sch. Dist.</u>, 66 F.3d at 1406-07; <u>Taylor</u>, 15 F.3d at 452-54; <u>Sims v. Adams</u>, 537 F.2d 829, 831 (5th Cir. 1976).

Ordinarily, supervisors may not be held vicariously liable for constitutional violations committed by subordinate employees. <u>See, e.g.</u>, <u>Taylor</u>, 15 F.3d at 452. However, supervisors may be liable for constitutional violations committed by subordinate employees when supervisors act, or fail to act, with <u>deliberate indifference</u> to violations of others' constitutional rights committed by their subordinates. <u>See, e.g.</u>, <u>City of Canton v.</u>

14

<u>Harris</u>, 489 U.S. 378, 386-90, 389, 387 (1989) (concluding that there are limited circumstances, which must rise to the level of "deliberate indifference" to constitutional rights, "in which an allegation of a 'failure to train' can be the basis for liability under § 1983"); <u>Alton v. Tex. A&M Univ.</u>, 168 F.3d 196, 200 (5th Cir. 1999) (noting, in a discussion of <u>Taylor</u>, "that a supervisory official may be liable under § 1983 if that official demonstrates a deliberate indifference to a plaintiff's constitutionally protected rights"); <u>Taylor</u>, 15 F.3d at 452-56, 454 (adopting a deliberate indifference standard to assess whether "[a] supervisory school official can be held personally liable for a subordinate's violation" of the constitutional rights of others); <u>Gonzalez v. Ysleta Indep. Sch. Dist.</u>, 996 F.2d 745, 753-60, 757 (5th Cir. 1993) (adopting the deliberate indifference standard in a similar appeal, and stating that sister circuits have "uniformly interpreted <u>Canton</u>'s 'deliberate indifference' requirement . . . to apply to all cases involving facially constitutional policies").

Deliberate indifference in this context "describes a state of mind more blameworthy than negligence." <u>Farmer v. Brennan</u>, 511 U.S. 825, 835 (1994) (citing <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976)). Rather, "acting or failing to act with deliberate indifference to a substantial risk of serious harm . . . is the equivalent of recklessly disregarding that risk." <u>Farmer</u>, 511 U.S. at 836. Relying on <u>Farmer</u>, this court has reiterated the

15

deliberate indifference standard in a variety of contexts.  See, e.g., Hernandez, 380 F.3d at 880 (stating that "[t]o act with deliberate indifference, a state actor must consciously disregard a known and excessive risk to the victim's health and safety"); Alton, 168 F.3d at 201 (stating that the deliberate indifference standard is whether "the officials' conduct reflected a conscious disregard for the risk that students would suffer bodily injuries of constitutional dimensions at the hands of student cadet leaders"); Bradley v. Puckett, 157 F.3d 1022, 1025 (5th Cir. 1998) (stating that a plaintiff "must show that the defendants (1) were aware of facts from which an inference of an excessive risk to the [plaintiff's] health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed").

Accordingly, to prevail against either Norris or Perry, the Plaintiffs must allege, inter alia, that Norris or Perry, as the case may be, had subjective knowledge of a serious risk of harm to the patients.  The test for deliberate indifference is subjective, rather than objective, in nature because "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."  Farmer, 511 U.S. at 838; see also Hernandez, 380 F.3d at 880; Palmer, 193 F.3d at 352.  Following the Supreme Court's clear direction, we "may infer the existence of this

16

subjective state of mind from the fact that the risk of harm is obvious." Hernandez, 380 F.3d at 881 (quoting Hope v. Pelzer, 536 U.S. 730, 738 (2002)) (emphasis in Hernandez).

Norris and Perry contend the allegations provided by the Plaintiffs show only that Mivacron was missing from the crash carts and that the Hospital's death rate was considerably higher than over the same period of the previous year. They argue that these alleged facts, even though we must accept them as true, do not demonstrate that Norris and Perry had the subjective knowledge and intent required to establish deliberate indifference. Determining whether Norris and Perry actually inferred that the patients were at risk is a question of fact beyond the scope of this appeal. See Smith, 158 F.3d at 913 (stating that whether a defendant actually drew an inference of risk from underlying facts is a fact question, which is not reviewable on interlocutory appeal).

We observe, however, that the case before us "is not a case in which a plaintiff seeks to impugn an otherwise legitimate official action by casting bare accusations of malice, bad faith, and retaliatory animus." Kinney, 367 F.3d at 374. Contrary to Norris's and Perry's assertions, the Plaintiffs' pleadings specify the dates when Mivacron disappeared from the crash cart and the dates when various patients died, and they continue to allege that the defendants were aware of these incidents. See Appendix, infra (providing a detailed timeline of the Plaintiffs'

17

allegations).  The Plaintiffs do not, with any specificity, allege <u>how</u> Norris and Perry came to know of these facts, but their pleadings are sufficiently detailed on this score to survive a motion to dismiss.

In addition, Norris and Perry argue that the Plaintiffs' allegations do not establish deliberate indifference because the alleged conduct did not constitute a conscious disregard of a known risk to patient safety.  Norris and Perry point out that their actions, as stated in the complaint, show that they initiated a good-faith--albeit ineffective--response, which is generally not sufficient to show deliberate indifference.  <u>See</u> <u>Lefall v. Dallas Indep. Sch. Dist.</u>, 28 F.3d 521, 531-32 (5th Cir. 1994) (citing <u>Taylor</u>, 15 F.3d at 456 & n.12).  According to the Plaintiffs' allegations, however, all of these actions occurred well after the defendants knew: (1) that Mivacron was found missing approximately ten different times; (2) that the drug had been wrongfully administered to Nocona patients; and (3) that the death rate at Nocona was at least double the death rate from the same two-month period from the preceding year.[7]  These

---

[7] Norris and Perry attempt to phrase the complaints' allegations to concede that the defendants did not have actual knowledge of facts from which they could infer a risk of serious harm until early February 2001.  In fact, the complaints make no such concession, but instead state that, by early February 2001, the defendants had connected the deaths to Nurse Jackson specifically.

allegations suffice to establish a conscious disregard of a known and excessive risk of serious harm.

In sum, the Plaintiffs alleged that Norris and Perry knew both that a dangerous drug was missing and that patients were dying at an unusually high rate. They also alleged that although Norris and Perry should and could have investigated the deaths and missing drugs or changed hospital policy, they did nothing for a considerable period of time. For Rule 12(b)(6) purposes, the requisite deliberate indifference is sufficiently alleged.

## B.    Objectively Unreasonable

"To be 'clearly established' for purposes of qualified immunity, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Kinney, 367 F.3d at 349-50 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). In practice, this means that "whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful action generally turns on the 'objective legal reasonableness' of the official's action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." Anderson, 483 U.S. at 639; see also Wilson, 526 U.S. at 614. This court has repeatedly held that objective reasonableness in a qualified immunity context is a question of law for the court to decide, not an issue of fact. See, e.g., Williams v. Bramer, 180 F.3d

19

699, 703 (5th Cir. 1999) (stating that "objective reasonableness is a matter of law for the courts to decide, not a matter for the jury"); Hare v. City of Corinth, 135 F.3d 320, 328 (5th Cir. 1998); Mangieri v. Clifton, 29 F.3d 1012, 1015-16 (5th Cir. 1994).

For a plaintiff to establish objective unreasonableness and overcome a qualified immunity defense, he must satisfy two inquiries. First, a plaintiff must show "the allegedly violated constitutional rights were clearly established" at the time of the alleged violation. Palmer v. Johnson, 193 F.3d 346, 351 (5th Cir. 1999) (quoting Hare, 135 F.3d at 326) (emphasis omitted in Palmer). Second, a plaintiff must demonstrate that "the conduct of the defendants was objectively unreasonable in the light of that then clearly established law." Id.

With respect to the first inquiry, Norris and Perry acknowledge that deliberately indifferent supervisors in prisons, schools, and mental institutions have been held liable for constitutional violations committed by subordinate employees. See, e.g., Appellant's (Atteberry) Br. at 17-18. But they argue that these precedents do not clearly establish that a public hospital official owes a constitutional duty to protect patients from harm in similar situations. Id.

Norris and Perry are mistaken in this belief. They attempt to define the parameters of clearly established law too narrowly. As this court has long held, the term "clearly established" "does

20

not necessarily refer to 'commanding precedent' that is 'factually on all-fours with the case at bar,' or that holds the 'very action in question' unlawful." Taylor, 15 F.3d at 454-55 (quoting Jefferson, 817 F.2d at 305 & n.1 (footnote omitted in Taylor) and Anderson, 483 U.S. at 640). Contrary to Norris and Perry's general assertions, a constitutional right "is clearly established if 'in the light of pre-existing law the unlawfulness [is] apparent.'" Taylor, 15 F.3d at 455 (quoting Anderson, 483 U.S. at 640) (omission in Taylor); see also Hope, 536 U.S. at 739-41; Kinney, 267 F.3d at 350. More to the point, the unlawfulness of their alleged conduct is readily apparent from relevant precedent in sufficiently similar situations. See, e.g., City of Canton, 489 U.S. at 381-90, 388 (stating that "a city can be liable under § 1983 for inadequate training of its employees"); Brown v. Bryan County, 219 F.3d 450, 459-463, 462 (5th Cir. 2000) (stating that a county, "through its policymaker, is culpable for purposes of § 1983 for its choice not to train [an employee] (and not to provide proper supervision for him)"); Bradley, 157 F.3d at 1025-26 (ruling, in a similar appeal, that a plaintiff's allegations were sufficient to pierce the qualified immunity of supervisory prison officials based on months of filed complaints about unhygienic conditions); Taylor, 15 F.3d at 452-65 (ruling, in a similar appeal, that a plaintiff's allegations were sufficient to pierce the qualified immunity of supervisory school officials who were allegedly indifferent to child

21

molestation committed by a subordinate); <u>Sims</u>, 537 F.2d at 831-32 (ruling, in a similar appeal, that the absence of direct "personal participation" by police supervisors and police disciplinary committees did not justify a 12(b)(6) motion to dismiss).

Moreover, the Plaintiffs have alleged that Norris and Perry failed to comply with a number of relevant state statutes, including Chapter 133 of the Texas Administrative Code, the Texas Pharmacy Act, the Texas Health Safety Code, and TEX. REV. CIV. STAT. art. 4590i. The Plaintiffs argue that these alleged violations of state statutes imposed non-discretionary duties upon Norris and Perry, vitiating their qualified immunity defense altogether. Qualified immunity is only available when an official acts "within the scope of [his or her] discretionary authority." <u>Brooks v. George County</u>, 84 F.3d 157, 164-65 (5th Cir. 1996) (quoting <u>Cronen v. Tex. Dep't of Human Servs.</u>, 977 F.2d 934, 939 (5th Cir. 1992)). In both the Plaintiffs' complaint and in their briefs before this court, this argument is tenuous. It is enough, at this point, to say that some of these statutes may create non-discretionary duties which would vitiate qualified immunity, and others may create duties with an element of discretion.

Finally, Norris and Perry contend the Plaintiffs have not shown their alleged actions were objectively unreasonable in light of existing law, even if existing law clearly established

22

that hospital officials owed a relevant duty to protect their patients from constitutional violations such as those allegedly committed by Nurse Jackson.  Norris and Perry assert that objectively reasonable hospital officials "could not have known that failing to piece together seemingly unrelated facts concerning higher death rates and missing medication was ultimately a violation of the Plaintiffs' constitutional rights." (Appellants' (Atteberry) Br. at 18.)  Without prejudice to Norris or Perry, we believe that the Plaintiffs' well-pleaded facts are sufficient to survive a motion to dismiss.

## IV. CONCLUSION

For the reasons stated above, we affirm the district court's denial of Norris's and Perry's 12(b)(6) motions to dismiss.

AFFIRMED.

# APPENDIX 1

## Timeline of Allegations

**November 23:**        Defendants realize that Mivacron is missing from a crash cart and replace it from the pharmacy stock.

**November 28:**        Defendants realize that Mivacron is missing from a crash cart and replace it from the pharmacy stock.

**December 12:**        Defendants realize that Mivacron is missing from a crash cart and replace it from the pharmacy stock.

**December 19:**        Defendants realize that Mivacron is missing from a crash cart and replace it from the pharmacy stock.

**December 24:**        Boyd Bruce Burnett dies.  It is unclear when he was injected.

24

Also, Barbara Atteberry is injected.

**December 30:**    Barbara Atteberry dies at another facility.

**December 31:**    Defendants realize that Mivacron is missing from a crash cart and replace it from the pharmacy stock.

**January 6:**    Dorothy Jean Vanderburg is injected and dies.

**January 7:**    Jimmy Ray Holder dies.  It is unclear when he was injected.

Also, Alma Dixon dies.  It is unclear when she was injected.

Also, defendants realize that Mivacron is missing from a crash cart and replace it from the pharmacy stock.

**January 8:**    Defendants realize that Mivacron is missing from a crash cart and replace it from the pharmacy stock.

25

**January 11:**     J.T. Nichols dies.  It is unclear when he was injected.

Also, John Walter Williams dies.  It is unclear when he was injected.

**January 24:**     William Griffin is injected.

Also, defendants realize that Mivacron is missing from a crash cart and replace it from the pharmacy stock.

**January 25:**     Defendants realize that Mivacron is missing from a crash cart and replace it from the pharmacy stock.

**January 28:**     Lydia Diane Weatherread (a/k/a Lydia Chapmon) is injected.  She survives.

**January 30:**     Defendant Pharmacist Fenoglio begins looking for the missing Mivacron.  He commences an internal investigation of the missing Mivacron, along with the hospital.

26

Also, William Griffin dies.

Also, defendants realize that Mivacron is missing from a crash cart and replace it from the pharmacy stock.

**January 31:**  Donna Curnutte is injected.

**Early February**:  Defendants realize that twenty-two of the twenty-three deaths in Nocona Hospital since November had their origin on the night shift, and that Jackson was on night shift duty when most or all of these deaths occurred.

**February 4:**  Everett Jackson dies.  It is unclear when he was injected.

**February 6:**  Defendants notify law enforcement.

**February 8:**  Defendant Pharmacist Fenoglio notifies the Texas State Board of Pharmacy of the loss or theft of at least ten vials of Mivacron Injection.

**February 18:**       Donnelly Reid is injected.  He survives until June.  He dies on June 18, 2001.

As a result of this injection, Nurse Jackson is caught.

**February 19:**       Donna Curnutte dies.

**February 20:**       Nurse Jackson's employment is terminated.

28