# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 14, 2012

No. 11–40253

Lyle W. Cayce
Clerk

CHRISTY CARTY, Individually and as Next Friend for Bryce Carty, Justice Carty and Maddy Carty, Minors and as Representative of the Estate of Jimmy Carty Jr, Deceased,

Plaintiff - Appellee

STATE OFFICE OF RISK MANAGEMENT,

Intervenor Plaintiff - Appellee

v.

COMMANDER ALBERT RODRIGUEZ; LIEUTENANT ERWIN BALLARTA,

Defendants - Appellants

---

Appeal from the United States District Court
for the Eastern District of Texas
USDC No.  2:06-CV-138

---

Before BARKSDALE, GARZA, and ELROD, Circuit Judges.

PER CURIAM:[*]

Albert Rodriguez ("Rodriguez") and Erwin Ballarta ("Ballarta") (together, the "Defendants") appeal the district court's denial of qualified immunity.  We REVERSE and REMAND.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11–40253

## I

This appeal arises out of the death of Jimmy Carty, Jr. ("Carty") after he suffered head and brain injuries in a Texas Department of Public Safety ("DPS") training exercise. Carty enrolled in the DPS's training academy for state trooper candidates in May 2005. At the time, Rodriguez was the academy's commander; Ballarta coordinated defense-tactics training. As part of his training, Carty participated in a drill on arrest-and-control tactics.[1] This drill amounted to a fighting exercise in which trooper candidates were paired in hand-to-hand, toe-to-toe contact.[2] Candidates participating in the drill wore protective headgear and boxing gloves.[3]

Carty and another candidate were assigned to fight in this drill together. Before they began to spar, two recruit counselors and a safety officer advised Ballarta, the academy's defensive tactics coordinator, to assign Carty a different opponent. Carty apparently was overmatched. The recruit counselors and safety officer cautioned Ballarta that facing the opponent to whom he was assigned would expose Carty to increased risk of serious injury. Ballarta did not assign Carty a new opponent. Carty and his opponent proceeded in the drill. Carty's opponent repeatedly struck him in the head and twice knocked him down. Ballarta limited staff's attempts to check on Carty throughout the match. As a result of participating in the drill, Carty suffered severe brain trauma and died a week later.

---

[1] Plaintiff alleged that Rodriguez reinstated this drill in 1994 despite repeated warnings of its risks.

[2] Plaintiff has characterized this exercise as "common street fighting along with a boxing element."

[3] Since 1978, at least 121 DPS recruits apparently have suffered some form of head injury while participating in this drill.

No. 11–40253

Individually, as next friend for her three children, and as the representative of her late husband's estate, Carty's wife Christy ("Plaintiff") sued Rodriguez and Ballarta in their individual and official capacities, as well as the DPS and manufacturers of the boxing gloves and protective headgear Carty used in the training drill.  Only Plaintiff's Fourteenth Amendment substantive due process claim under § 1983 against Rodriguez and Ballarta in their individual capacities remains.[4]

The district court initially denied Defendants' motion to dismiss Plaintiff's constitutional claim based on qualified immunity, concluding that Plaintiff's complaint alleged conscience-shocking conduct sufficient to support her substantive due process claim.[5]  After Rodriguez and Ballarta appealed that ruling, this court vacated the district court's decision without addressing the merits of Defendants' qualified immunity defense.[6]

---

[4]  Plaintiff's previously dismissed claims are subject to appeal upon entry of final judgment on remand.

[5]  The district court rejected Plaintiff's attempts to oppose qualified immunity on the basis that the Defendants owed her husband a safe working environment or under a theory of a special relationship or Defendants' failure to protect Carty.  The Plaintiff concedes on appeal that these theories do not apply.  We agree.  *See Collins v. City of Harker Heights*, 503 U.S. 115, 126 (1992) (rejecting claim that the Due Process Clause imposes a duty on government employers to provide its employees with a safe working environment); *Rios v. City of Del Rio*, 444 F.3d 417, 421–22 (5th Cir. 2006) (explaining that a state is not liable for its failure to protect, but recognizing an exception for individuals in special relationships with the state, such as those who are incarcerated, institutionalized, or involuntarily restrained in some way) (citing *DeShaney v. Winnebago County*, 489 U.S. 189 (1989)).

[6]  This court ruled that the district court abused its discretion in not addressing Defendants' motion for Plaintiff to file a reply under Fed. R. Civ. P. 7(a) to Defendants' answer raising the qualified immunity defense and instructed the district court to order Plaintiff to file such a reply.  *Carty v. Rodriguez*, No. 06–41579, slip op. at 1–7 (5th Cir. Dec. 21, 2009) (per curiam).  (On remand, Plaintiff replied under Rule 7(a) and amended her complaint to reflect her reply's factual allegations.)  Writing separately, Judge Owen agreed to vacate the district court's order, but dissented from the court's decision to remand on the Rule 7(a) ground.  Judge Owen would have rendered judgment for Defendants, reasoning: "It is not clearly established that a state employer [training law enforcement] violates the due process clause . . . if the training involves [a substantial risk] of bodily harm.  Nor is it clearly established law that a claim for deliberate indifference that shocks the consci[ence] can be

No. 11–40253

On remand, the Defendants again moved the district court to dismiss Plaintiff's constitutional claim on the basis of qualified immunity. The court again denied Defendants' motion, concluding that Plaintiff's constitutional pleadings were adequate and that the Defendants were not entitled to qualified immunity. Specifically, applying the familiar two-prong test for determining whether qualified immunity guards government officials from liability, *see, e.g.*, *Pearson v. Callahan*, 555 U.S. 223, 232 (2009), the district court concluded that Plaintiff "adequately pled a violation of Jimmy Carty's constitutional right to bodily integrity and life by defendants' deliberate indifference," and that such right "was clearly established in 2005, the time of the alleged misconduct." *Carty v. Tex. Dep't of Pub. Safety*, No. 2:06-CV-138, 2011 WL 1750680, at \*7 (E.D. Tex. Feb. 22, 2011). Further, the district court found that it was clearly established that this constitutional right may be violated where government officials show deliberate indifference to the right.[7] *Id.* at \*8. In this interlocutory appeal, Defendants challenge the district court's refusal to grant them qualified immunity.

"[A]n order denying qualified immunity, to the extent it turns on an issue of law, is immediately appealable." *Behrens v. Pelletier*, 516 U.S. 299, 311(1996) (internal quotation marks and citation omitted). Our jurisdiction in this context

stated when the injured party is an employee and is not in custody or the equivalent of custody." *Id.* at 9 (Owen, J., dissenting).

[7] Because the district court found a clearly established right on these grounds, it refused to address whether Plaintiff's "state-created danger claim" was clearly established under the Due Process Clause of the Fourteenth Amendment. Plaintiff claimed in its briefing that this theory provides an alternative basis to affirm the district court's denial of qualified immunity; however, at oral argument, Plaintiff conceded its inapplicability. We agree that the doctrine does not provide a basis for denying qualified immunity here. *See Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 249 (5th Cir. 2003) ("We have never recognized state-created danger as a trigger of State affirmative duties under the Due Process clause.").

No. 11–40253

extends to interlocutory appeals of denials of motions to dismiss and denials of motions for summary judgment. *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 251 (5th Cir. 2005). This court reviews de novo a district court's refusal to dismiss based on qualified immunity. *Id.* at 252. We accept all well-pled facts as true and draw all reasonable inferences in favor of the nonmoving party. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009).

## II

To defeat a claim of qualified immunity, a plaintiff must show: (1) the government official violated a statutory or constitutional right; and (2) the right was clearly established at the time of the challenged conduct. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In a recent en banc decision, *Morgan v. Swanson*, 659 F.3d 359 (5th Cir. 2011), this court discussed the order in which these steps should be addressed, and whether they must both be addressed:

> [U]ntil recently the Supreme Court *required* us in every case to address the underlying constitutional claim, so as to promote "the law's elaboration from case to case." [*See Saucier v. Katz*, 533 U.S. 194 (2001).] Then, in *Pearson v. Callahan*, [555 U.S. 223 (2009),] the Court retreated from this "rigid order of battle," granting lower courts discretion over the order of the analysis and making step one optional when immunity is required at step two. However, the *Pearson* Court cautioned that while "the *Saucier* protocol should not be regarded as mandatory in all cases, . . . it is often beneficial."
>
> The Supreme Court in *Pearson* outlined a number of situations where federal courts might wish to skip step one of the qualified-immunity analysis. These include: (1) "cases in which the constitutional question is so factbound that the decision provides little guidance for future cases"; (2) "when it appears that the question will soon be decided by a higher court"; (3) "[a] constitutional decision resting on an uncertain interpretation of state law"; (4) "[w]hen qualified

No. 11–40253

immunity is asserted at the pleading stage"; and "the precise factual basis for the plaintiff's claim or claims [is] hard to identify"; and (5) "circumstances in which the first step of the *Saucier* procedure may create a risk of bad decisionmaking."

Recent decisions suggest that the Supreme Court continues in its retreat from the old *Saucier* two-step analysis. In *Camreta v. Greene*, [131 S. Ct. 2020, 2032 (2011),] using stronger language than before, the Court clarified that lower courts "*should* address *only* the immunity question" in the circumstances outlined in *Pearson*. The *Camreta* Court further cautioned that lower courts should "think hard, and then think hard again" before unnecessarily deciding the merits of a constitutional issue, and thus risk "turning small cases into large ones." *Id.* Then, only days later, in *Ashcroft v. al–Kidd*, [131 S. Ct. 2074, 2080 (2011),] the Court cautioned that we should "think carefully before expending 'scarce judicial resources' to resolve difficult and novel questions of constitutional or statutory interpretation that will 'have no effect on the outcome of the case.'"

*Id.* at 384–85 (footnotes omitted) (emphases in original).

On appeal, Defendants contend that Plaintiff failed to show (1) a violation of a constitutional right and (2) that the alleged constitutional right was clearly established at the time of the incident. We address the second question first. *See id.*

### III

The district court found that a constitutional right was clearly established at the time of the Defendants' alleged misconduct, generally relying on a clearly established constitutional right to bodily integrity and life recognized in cases involving the sexual abuse of children. *See Doe v. Rains Cnty. Indep. Sch. Dist.*, 66 F.3d 1402, 1406 (5th Cir. 1995) ("'[S]choolchildren do have a liberty interest in their bodily integrity that is protected by the Due Process Clause of the

No. 11–40253

Fourteenth Amendment and . . . physical sexual abuse by a school employee violates that right.'") (quoting *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 445 (5th Cir. 1994)).   The district court further found that it was also clearly established that a government official may violate this constitutional right by showing deliberate indifference to it.

Defendants dispute the district court's holding, stressing that the case law relied upon by the district court does not concern a workplace like the one here and, moreover, does not put a reasonable officer on notice that planning and conducting enforcement training exercises could violate the Due Process Clause. Plaintiff contends that the spare text of the Due Process Clause provides the clearly established right that the Defendants violated.   Plaintiff expressly grounds her claim upon the premises that (1) schoolchildren have a liberty interest in their bodily integrity that is protected by the Due Process Clause and (2) schoolchildren's physical sexual abuse by a school employee violates that right.   Drawing on those principles, she asserts that the Defendants acted with deliberate indifference by perpetuating the tactical drill in the face of confirmed risk of injury.

This court has explained that:

> To be clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  The unlawfulness of the defendant's actions must have been readily apparent from sufficiently similar situations, but it is not necessary that the defendant's exact act have been illegal.

*Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (internal citations omitted).  "The central concept is that of 'fair warning':  The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave

No. 11–40253

reasonable warning that the conduct then at issue violated constitutional rights.'" *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc) (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002)).

Plaintiff's claim that the text of the Due Process Clause provides the basis for a clearly established right here lacks merit. *See Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (refusing to apply the "test of 'clearly established law' . . . at this level of generality"). Her arguments against qualified immunity otherwise fail. To support her position that Defendants' deliberately indifferent conduct caused Carty's death and thus violated his substantive due process right to bodily integrity and life, Plaintiff relies principally on Fifth Circuit decisions recognizing a student's right to be free from physical abuse by school employees. *See, e.g.*, *Taylor*, 15 F.3d at 450–51. The court has grounded this right in the student's substantive due process right to bodily integrity. *Id.* Under the second prong of the qualified immunity analysis, it cannot be said that this line of authority provides clearly established law for Plaintiff's position. These cases are not "sufficiently similar" to the facts here to have given the Defendants "fair warning" that their conduct violated constitutional rights. *Kinney*, 367 F.3d at 350. That these cases typically involved sexual abuse, and an adult intentionally taking advantage of a child under his or her care, sufficiently demonstrates their inadequacy for giving "reasonable warning" to the Defendants in this case. *Id.* Plaintiff fails to persuade us that Defendants violated a clearly established right.

## IV

For the reasons above, we REVERSE and RENDER in favor of Defendants on the remaining claim against them based on qualified immunity. We REMAND for further proceedings consistent with this opinion.